## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 08 CV 3160 |
| | ) |
| EGAN MARINE, INC., in personam, MOTOR | ) Judge Coar |
| VESSEL LISA E, in rem, and TANK BARGE | ) |
| EMC-423, in rem, | ) Magistrate Judge Cox |
| | ) |
| Defendants. | ) |

### EMERGENCY MOTION FOR ENLARGEMENT OF TIME TO ANSWER MOTION TO PRESERVE EVIDENCE OR, IN THE ALTERNATIVE, MOTION FOR PRELIMINARY INJUNCTION TO PRESERVE EVIDENCE

**NOW COME** the defendants, EGAN MARINE CORPORATION (incorrectly sued as EGAN MARINE, INC., in personam), in personam, MOTOR VESSEL LISA E, in rem, and TANK BARGE EMC-423, in rem, (hereinafter collectively referred to as "EMC Defendants") by and through their attorney, Jennifer Curtin Timm, and pursuant to Rule 65 of the Federal Rules of Civil Procedure, move this Honorable Court to grant defendants until August 6, 2008, to file an answer in this matter and for an order preserving certain critical evidence or, in the alternative, a preliminary injunction preventing the disposal or transportation of critical evidence from a USCG Evidence Storage Yard for thirty days, and in support thereof, state as follows:

### STATEMENT OF FACTS

1.      Swanson, Martin & Bell, LLP was retained to represent defendants in this matter on July 22, 2008.

2.      On July 2, 2008, this Court granted defendants until July 25, 2008, to answer or otherwise plead to the allegations in plaintiff's June 2, 2008, Verified Complaint (hereinafter "Complaint") seeking, *inter alia*, removal costs incurred and compensation claims paid by the

Oil Spill Liability Trust Fund (also known as the National Pollution Fund)[1] as a result of an explosion aboard and partial sinking of the EMC-423 which occurred on or about January 19, 2005. (A copy of said complaint is attached hereto as Exhibit A.)

    3.    Plaintiff has agreed to an extension to August 6, 2008, for defendants to answer. (A copy of e-mail correspondence confirming the party's agreement is attached as Exhibit B.)

    4.    According to plaintiff's complaint, on or about January 19, 2005, the EMC-423 exploded on the Chicago Sanitary and Ship Canal (hereinafter "the Canal"), a navigable water of the United States, at or near the Cicero Avenue Bridge in the City of Chicago, Illinois. (See Exhibit A at paragraph 10.) Plaintiff alleges the United States responded to the incident, including investigation of the cause of the explosion. (Id. at paragraph 12).

    5.    For plaintiff, the United States Coast Guard (hereafter "USCG') took the lead role in investigating the cause of the EMC-423 explosion. In this role, the USCG assumed primary responsibility for collecting and maintaining evidence gathered during its investigation of the EMC-423 explosion. (Please see copy of letter dated January 24, 2005, from H.M. Hamilton, Commander, USCG, a copy of which is attached hereto as Exhibit C, advising EMC that Commander Hamilton was the "lead investigator assigned to this marine casualty" and he had the "responsibility to ensure that the integrity of all evidence is maintained.")

    6.    On May 18, 2005, the USCG took exclusive control of all evidence under penalty of law. (See attached Exhibit D.)

    7.    Dennis Egan, the President of Egan Marine Corporation (hereinafter "EMC"), was named Salvage Master to effectuate the raising of the partially sunken EMC-423 and to

---

[1]   On information and belief, the National Pollution Fund is administered by National Pollution Funds Center (NPFC) which is a fiduciary agent of OSLTF and is independent unit of United States Coast Guard.

collect evidence for the USCG.  At all times during the salvage operations, the Salvage Master worked under the supervision and direction of the USCG.

8.    The USGC ordered the Salvage Master to place the collected evidence into a USCG designated evidence storage yard (hereinafter "USCG Evidence Storage Yard") constructed upon CITGO's premises located at 3737 South Cicero Avenue, Cicero, Illinois (hereafter, "the CITGO facility").  The evidence consists of equipment, materials, debris, and remains of the EMC-423 which were removed from the water and nearby areas following the January 2005 explosion.

9.    On information and belief, CITGO had never meaningfully used the portion of the CITGO facility where the USCG Evidence Storage Yard was constructed and remains.

10.    On information and belief, the plaintiff by and through the USCG, has been paying CITGO to store the evidence or has some other agreement for storage of evidence from the EMC-423 explosion and to guard the USCG Evidence Storage Yard for the past three and a half years.

11.    On information and belief, CITGO has been acting as an employee and/or agent of the plaintiff in storing this evidence and/or guarding access to the USCG Evidence Storage Yard.

12.    On or about March 18, 2008, defendants received correspondence from Commander Mark Hamilton, stating that certain evidence had been removed from the USCG Evidence Storage Yard.[2]  In this letter, Commander Hamilton released the USCG's hold on the

---

[2]    On information and belief, the only evidence the USCG retained was a standpipe and portions of cargo pump and/or cargo pump motor to lend support its theory as alleged in paragraph 59 of Count IV of the Complaint that the use of a propane torch by the deceased EMC deckhand near "an open standpipe" caused the explosion.

3

remaining evidence without making arrangements for return of the equipment to EMC. (See attached Exhibit E.)

13.    On May 10, 2008, defendants received a letter dated May 7, 2008, from Charles G. Stark, Plant Manager of CITGO Petroleum Corporation, demanding the remaining evidence from the EMC-423 explosion be removed within sixty (60) days or CITGO would dispose of the evidence. (A copy of said letter is attached hereto as Exhibit F.) CITGO extended the deadline such that CITGO now intends to dispose of the equipment as of July 26, 2008. (See attached Exhibit G.) The evidence is material to the defenses defendants intend to advance at trial and must be fully investigated and evaluated by appropriate consulting personnel.

14.    In addition to the instant litigation, the evidence at the USCG Evidence Storage Yard has implications for an ongoing federal grand jury (empanelled to determine whether Egan Marine Corporation is criminally responsible for the EMC-423 barge explosion)[3] and for the following litigation: 1) a limitation of liability action filed by EMC in the Northern District of Illinois;[4] 2) a complaint for damages filed by the State of Illinois which is pending in the Circuit Court of Cook County;[5] and 3) an action by the estate of the deceased deckhand against ExxonMobil.[6]

---

[3] On or about February 15, 2008, two current employees of EMC, Bill Rodgers and Andrew Chanda, were subpoenaed to testify on March 6, 2008, at 2:30 p.m. before a grand jury sitting before the U.S. District Court for the Northern District of Illinois. Both employees testified on March 6, 2008, before the grand jury in compliance with this subpoena. In addition, on March 14, 2008, Egan Marine Corporation received a subpoena for records returnable on April 3, 2008 before the grand sitting in case number 07 GJ 1064. EMC complied with the grand jury's subpoena for records. Finally, Dennis Michael Egan, the captain of the M/V Lisa E at the time of the explosion, has been identified as a target and subpoenaed to testify before the federal grand jury on July 24, 2008.

[4] Egan Marine Corporation filed a limitation of liability action before the U.S. District Court for the Northern District of Illinois entitled In the Matter of the Complaint of EGAN MAINE CORPORATION, Owner of the Motor Vessel "LISA E" and the Barge EMC 423, for Exoneration from or Limitation of Liability, case number 05 C 4074 which remains currently pending and unresolved before the Honorable Judge Milton I. Shadur.

[5] The People of the State of Illinois at the request of the Illinois Environmental Protection Agency seeking damages and civil penalties against EMC as a result of the January 19, 2005, EMC 423 barge explosion. This matter is

4

15.    Attached as Exhibit H is the affidavit of Charles C. Roberts, Ph.D., P.E., stating the evidence held in the USCG Evidence Storage Yard should not be destroyed.  (See attached Exhibit H.)

16.    On May 15, 2008, counsel for EMC wrote the USCG to request that the USCG place the evidence stored at the USCG Evidence Storage Yard back onto an EMC deck barge, from which it was removed pursuant to USGC's order.  (A copy of said letter is attached hereto as Exhibit I.)

17.    On July 14, 2008, EMC received July 11, 2008, correspondence from Matthew Merriman, Lieutenant Commander of the USCG.  In his letter, Lieutenant Commander Merriman stated that the USCG will not move EMC's material or pay for the removal of the evidence from the CITGO facility.  (A copy of said letter is attached hereto as Exhibit J.)

18.    With CITGO's unilaterally-imposed deadline of July 26, 2008, at hand, there is insufficient time to make arrangements for removal of this critical evidence.

19.    EMC defendants will be irreparably injured if the evidence setting forth the basis of defendants defense is removed from the USCG Evidence Storage Yard and disposed of.

20.    There is minimal burden on plaintiff or upon CITGO to maintain the evidence in its current condition and location for thirty days.

21.    An order preserving the status quo is necessary to protect defendants' ability to investigate the equipment and formulate a defense at trial.

---

currently pending in the Chancery Division of the Circuit Court of Cook County under case number 05 CH 14810 before the Honorable Judge Agran and has a bench trial date set for September 8, 2008.

## ARGUMENT

## DEFENDANTS REQUEST FOR ADDITIONAL TIME TO ANSWER OR PLEAD

The law firm of Swanson, Martin & Bell, LLP was formally retained in this matter on July 22, 2008. During a telephone conversation of July 22, 2008, plaintiff, through Stephen Campbell, agreed to allow defendants until August 6, 2008, to answer or otherwise plead. (A copy of e-mail correspondence memorializing that agreement is attached as Exhibit B.) There has been no undue delay on the part of EGAN Marine, and allowing the additional time will not delay prosecution of this case.

## DEFENDANTS' MOTION FOR AN ORDER PRESERVING CRITICAL EVIDENCE

Defendants move this Court to order plaintiff to extend or maintain **for thirty days** the terms and conditions plaintiff has enjoyed regarding storage and maintenance of evidence at the USCG Evidence Storage Locker (CITGO), as have existed for approximately three and one-half years, and in support thereof, defendants state as follows:

Court possesses broad discretion in ordering preservation of evidence. In re African-American Slave Descendants' Litigation, 2003 WL 24085346 (not reported in F. Supp), reversed on other grounds at 471 F.3d 754. The requested order must specifically identify the evidence at issue and further identify the time frame requested. When presented with a motion to preserve evidence, the Court should consider the following factors:

1) Whether the movant can demonstrate the likelihood the opposing party will destroy necessary documentation;

2) Whether the movant will suffer irreparable harm if the preservation order is not granted; and

---

[5] Lenore Oliva as Special Administrator of the Estate of Alexander Oliva, deceased, filed a lawsuit against Exxon Mobil which remains pending and unresolved before the Honorable Judge Matthew F. Kennelly in the U.S. District Court for the Northern District of Illinois under case number 07 CV 1056.

3)    The burden imposed upon the parties by granting the motion.

Likelihood Necessary Documents Will be Destroyed:  The likelihood that important evidence will be destroyed is clear.  An accident reconstruction expert's affidavit clearly establishes the importance of this evidence.  Furthermore, the government's letter of July 11, 2008, (Exhibit J) clearly establishes the government will not rescind its release and will not make arrangements for delivery or safe-handling of the evidence.  Finally, CITGO's correspondence of May 7, 2008, unmistakably states the evidence will be disposed of.  (See attached Exhibit F.) There is no question that July 26 presents the date, after which, important evidence is directly imperiled of being destroyed unless this court issues an order preventing such.

Whether Movant Will Suffer Irreparable Harm:  The harm presented by destroying this evidence is clear:  A pending federal grand jury investigation, plus at least three other litigation matters, have, at their center, inquiry into the cause and circumstances of Tank Barge EMC-423's explosion on January 19, 2005.  All of the remains of Tank Barge EMC-423 and evidence related thereto are contained at the USCG Evidence Storage Yard (3737 South Cicero Avenue, Cicero, Illinois).  Disposing of the evidence, as CITGO has threatened (Exhibit F), threatens to destroy the evidence which bears directly on the cause of the explosion and spill, and the investigation of a pending federal grand jury and other related litigation.  Destroying evidence which forms the basis of the defense will cause irreparable harm in this case and in all pending litigation and investigations.

The Burden on Plaintiff is Not Significant:  In January of 2005, plaintiff directed that the residue and evidence of the EMC-423 be located at the CITGO facility at 3737 South Cicero Avenue, Cicero, Illinois. (See attached Affidavit of Dennis Egan, Exhibit K.) The materials and evidence have been held at that location for approximately three and one-half years.  Although

defendants are not privy to the terms between plaintiff and CITGO regarding the USCG Evidence Storage Yard, on information and belief, a court order continuing the plaintiff's relationship with CITGO for an additional thirty days, will not impose a significant burden on plaintiff or the property owner, CITGO. An order preserving the evidence will merely maintain the status quo by requiring plaintiff to continue to hold critical evidence in the same manner as it has been held for the past three years.

The Order Must Specifically Identify the Evidence and the Requested Time Frame: The evidence at issue is the equipment, materials, debris, and remains of the EMC-423 currently held at the USCG Evidence Storage Yard, at 3737 South Cicero Avenue, Cicero, Illinois. These materials have been sequestered and are located in a fenced and guarded area. Defendants request that plaintiff be ordered to maintain -- **for thirty days** -- the same relationship or agreement with the property owner, which has existed for three and one-half years.

## DEFENDANTS' REQUEST – IN THE ALTERNATIVE – FOR PRELIMINARY INJUNCTION AGAINST CITGO'S REMOVING OR DISCARDING ANY EVIDENCE

In the alternative, defendants seek a preliminary injunction against CITGO, to preserve the *status quo* regarding critical evidence, by prohibiting CITGO from discarding any materials or evidence from USCG Evidence Storage Yard at 3737 South Cicero Avenue, Cicero, Illinois for thirty days, and in support thereof defendants state as follows:

As a threshold matter, CITGO was provided with notice of this emergency motion on July 23, 2008. Attached hereto, please find proof of service regarding this motion.

The purpose of a preliminary injunction is to preserve the *status quo*. EEOC v. City of Janesville, 630 F.2d 1254, 1259 (7th Cir. 1980). Additionally, courts examine four criteria when asked to issue a preliminary injunction:

1)    Whether the movant will suffer irreparable harm, or movant has no adequate remedy at law;

2)    The movants likelihood of ultimate success on the merits;

3)    Whether the threat of harm to movant outweighs the harm to the opposing party; and

4)    The public interest will not be disserved by granting of the temporary injunction.

Although the Court must evaluate all four criteria, the movant need not prevail on all four criteria. Reinders Bros. v. Rain Bird Eastern Sales Corp., 627 F.2d 44, 49 (7th Cir. 1980)

Whether Movant Will Suffer Irreparable Harm/Movant has no Adequate Remedy at Law: Defendants adopt and incorporate by reference the above argument regarding the irreparable harm that will result if the evidence at issue is destroyed. In sum, critical evidence regarding the cause of the accident – evidence at the center of four litigation matters and one pending federal grand jury investigation – is at risk of being destroyed. Destruction of such evidence will work irreparable harm to defendants' ability to investigate and defend the pending cases. There is no remedy at law which can eliminate this. The damage caused by destroying this critical evidence cannot be resolved by money damages against any party.

Likelihood of Success on the Merits:    The 7th Circuit has adopted a sliding scale regarding a movant's need to show likelihood of success on the merits, holding it is enough that "plaintiff's chances are better than negligible...." Roland Machinery Co., v. Dresser Industries, Inc., 749 F.2d 380, 387, (7th Cir. 1984) citing Omega Satellite Products Co., v. City of Indianapolis, 694 F.2d 123, (2nd Cir. 1971). A showing of probability of success on the merits varies with the quality and quantum of harm the moving party will suffer from denial of an injunction. (Roland, above, at 387, citing District 40, United Mine Workers of America v.

9

International Union, United Mine Workers of America, 412 F.2d 165, 168 (D.C. Cir. 1969). In this instance, the harm from destroying the evidence will be irreparable because critical evidence regarding the defense -- which was held by plaintiff for three years -- will be lost for all time. That evidence goes to the heart of several cases, including the instant matter. The evidence in question includes critical data regarding the cause, nature, and source of the explosion. This evidence may establish the explosion was caused solely by the actions of a third party. Evidence regarding culpability of third parties is a material aspect of defendants' defense. Also, evidence regarding the culpability of third parties. Defendants need the evidence to establish their defense. The evidence may establish a complete or partial defense. For this reason, the evidence must be preserved.

Whether Harm to Movant Outweighs Harm to other Parties:  Defendants adopt their arguments, above, that the burden is not great on plaintiff and CITGO merely by continuing an existing contractual relationship for another thirty days. CITGO cannot be presently using the area which is fenced and secure. Furthermore, defendants are merely seeking continuation of the pending arrangement between the USCG and CITGO, which has protected the evidence for three years. There is little burden on plaintiff or CITGO to merely maintain the *status quo*.

The Public Interest will not be Disserved by Issuance of an Injunction:  The public interest will not be disserved by this Court's ordering plaintiff and/or CITGO to maintain, for an additional thirty days, an existing relationship that has protected the preserved evidence for three and one-half years. Public property is not at issue.

Wherefore, for the foregoing reasons, defendants respectfully ask this Court for the following:

1)    an order enlarging defendants' time to answer or otherwise plead to

10

August 6, 2008;

2) an order directing plaintiff to preserve – for 30 days – plaintiff's existing order or contractual relationship with CITGO, such that no evidence will be released for destruction or disposal; or in the alternative,

3) an order directing CITGO to maintain the evidence in the USCG Evidence Storage Yard, and further prohibiting CITGO from disposing any evidence USCG Evidence Storage Yard for a period of thirty days.

Respectfully submitted,

s/Jennifer Curtin Timm
Jennifer Curtin Timm
Attorney for Defendants
ARDC: 6229091
Attorney for Defendants
Egan Marine Corporation
15200 East Canal Bank Road
P.O. Box 669
Lemont, Illinois 60439
(630) 739-0947
Fax: (630) 739-4455

## CERTIFICATE OF SERVICE

I, Jennifer Curtin Timm, being first duly sworn, upon oath, depose and state that affiant served a copy of the foregoing **Motion to Preserve and/or Return Evidence Regarding the EMC-423 Explosion**, electronically referenced herein to all attorneys of record, at their listed addresses below, on July 23, 2008.

s/Jennifer Curtin Timm
Jennifer Curtin Timm
Attorney for Defendants
ARDC: 6229091
Attorney for Defendants
Egan Marine Corporation
15200 East Canal Bank Road
P.O. Box 669
Lemont, Illinois  60439
(630) 739-0947
Fax:  (630) 739-4455

## SERVICE LIST

Stephen R. Campbell
Senior Trial Counsel
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 14271
Ben Franklin Station
Washington, DC 20044-4271
(202) 616-4026

J. Dwight LeBlanc
Chaffe McCall, LLP
1100 Poydras Street
2300 Energy Centre
New Orleans, LA 70163
(504) 585-7013
leblanc@chaffe.com

Charles G. Stark, Plant Manager
CITGO Petroleum Corporation
3737 South Cicero Avenue
Cicero, IL 60804-4577

# EXHIBIT A

# UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Action No. _____ |
|  | ) |  |
| Plaintiff, | ) | FILED: JUNE 02, 2008 |
|  | ) | 08CV3160          TC |
| v. | ) | JUDGE COAR |
|  | ) | MAGISTRATE JUDGE COX |
| EGAN MARINE, INC., *in personam*, | ) |  |
| MOTOR VESSEL LISA E, *in rem*, and | ) |  |
| TANK BARGE EMC-423, *in rem*, | ) |  |
|  | ) | In Admiralty |
| Defendants | ) |  |
|  | ) |  |

## VERIFIED COMPLAINT

Plaintiff, United States of America, through the undersigned counsel, alleges, upon information officially furnished, as follows:

### STATEMENT OF THE CASE

1.     This is an admiralty and maritime claim pursuant to Rule 9(h) of the Federal Rules of Civil Procedure, as more fully appears hereinafter.

2.     Plaintiff United States of America is authorized to sue pursuant to the general maritime law, the Rivers and Harbors Act, 33 U.S.C. §§ 401, *et seq.* (hereinafter "RHA"), the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.*, as amended by the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701, *et seq.*, (hereinafter jointly "OPA"), and other Federal law.

3.     The United States is and was at all material times a sovereign nation authorized to sue pursuant to the original jurisdiction conferred upon this Court by 28 U.S.C. §§ 1333,

1345, and 1355, and other federal law.

4.      The United States asserts claims on behalf of the Oil Spill Liability Trust Fund (hereinafter "Fund"), pursuant to the OPA, to recover removal costs incurred directly by the Fund as well as removal costs and damages incurred by the Fund through compensation paid to claimants. At present, the amount of such payments by the Fund is $1,562,101.78, with further claims awaiting adjudication.

5.      Defendant Egan Marine, Inc., is an Illinois corporation with its principal place of business located in Lemont, Illinois, and was at all material times the owner and operator of the defendants Motor Vessel LISA E ("LISA E") and Tank Barge EMC 423 ("EMC 423").

6.      Upon information and belief, defendant vessel LISA E, *in rem*, is and was at all pertinent times a vessel, documented in the United States, of approximately 62 feet in length and 75 gross tons, and is now or during the pendency of process hereunder will be within this District and, at all pertinent times, was a vessel "used and employed" in violating provisions of the Rivers and Harbors Act within the meaning of 33 U.S.C. § 412.

7.      Upon information and belief, defendant vessel Tank Barge EMC 423 ("EMC 423"), *in rem*, is and was at all pertinent times an oil tank barge, documented in the United States, of approximately 295 feet in length and 1,397 gross tons, and is now or during the pendency of process hereunder will be within this District and, at all pertinent times, was a vessel "used and employed" in violating provisions of the Rivers and Harbors Act within the meaning of 33 U.S.C. § 412.

2

8.    The United States has a maritime lien on the defendant vessels, their engines, tackle, appurtenances, etc., *in rem*, in an amount which will be established at trial.

9.    On or about January 19, 2005, the EMC 423, under the control of the LISA E, was carrying a cargo of approximately 14,000 barrels of clarified slurry oil. The only source of propulsion or movement for the EMC 423 was the LISA E.

10.    On or about January 19, 2005, as a result of the operation of the defendant vessels by defendants, the EMC 423 exploded on the Chicago Sanitary and Ship Canal, a navigable water of the United States, at or near the Cicero Avenue Bridge in the City of Chicago, Illinois.

11.    The explosion damaged the defendant vessels and other property, obstructed the waterway, and discharged a significant quantity of the cargo of clarified slurry oil into the navigable waters of the United States (hereinafter"Oil Spill").

12.    As a result of the explosion and Oil Spill from the EMC 423, the United States took action to respond to the Oil Spill from the EMC 423, and remove the oil and restore the surrounding environment.

13.    The Oil Spill was caused by the negligence, gross negligence, and/or violation of applicable federal safety, construction, or operating regulation by defendant Egan Marine, Inc., its agents or employees, or by persons acting pursuant to a contractual relationship with defendant Egan Marine, Inc., or by the owners and operators of the defendant vessels.

14.    The Oil Spill into and upon the navigable waters of the United States was caused in part, or solely, by the negligent and grossly negligent conduct of defendant Egan

3

Marine, Inc., and/or the owners and operators of the defendant vessels in operating the defendant vessels in an unsafe, imprudent and unseaworthy manner and condition.

15.     Commencing on January 19, 2005, the United States responded to the Oil Spill and incurred pollution removal and other costs in connection with the clean up and other response efforts.

16.     The United States has incurred and will continue to incur other damages caused by the Oil Spill in an amount which will be established at trial..

17.     As a result of the Oil Spill and threat of discharge of oil, the United States has incurred and will continue to incur, substantial costs associated with removal and response activities, enforcement of this action, damages, costs and/or disbursements, in an amount which will be established at trial.

18.     Defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels, *in personam*, and the defendant vessels, *in rem*, are each jointly and severally liable for the costs, damages and/or disbursements of the United States arising from the Oil Spill.

COUNT I
## CLAIMS UNDER THE OIL POLLUTION ACT

19.     The United States refers to and incorporates by reference, as though fully set forth herein, each and every paragraph of the Verified Complaint.

20.     Pursuant to the OPA, at 33 U.S.C. § 2702(a), each responsible party for a vessel from which oil is discharged into or upon the navigable waters or adjoining shorelines or the exclusive economic zones of the United States is strictly liable, jointly and severally,

4

to the United States for its removal costs, damages, and/or disbursements as specified under the OPA.

21.    In the case of a pollution incident involving a vessel, the OPA, at 33 U.S.C. § 2701(32)(A), defines a "responsible party" as any person owning, operating, or demise chartering the vessel. The defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels are responsible parties under the OPA.

22.    The clarified slurry oil which was discharged as a result of the Oil Spill is "oil" as defined by the OPA, at 33 U.S.C. § 2701(23).

23.    At the time of the Oil Spill, the defendant vessels, as a tug and tow combination, constituted a "vessel" within the meaning of the OPA, at 33 U.S.C. § 2702.

24.    At the time of the Oil Spill, the defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels were collectively and individually owners or operators of the tug and tow combination, consisting of the defendant vessels, under the general maritime law and with the meaning of those terms under the OPA, at 33 U.S.C. § 2701(26).

25.    As a result of the Oil Spill, the United States has suffered, and will continue to suffer, costs, damages, and/or disbursements under the OPA, in an amount which will be established at trial.

26.    The defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels are strictly liable, jointly and severally, to the United States for its costs and damages, and/or disbursements in an amount $1,562,101.78, with further claims awaiting adjudication.

COUNT II
SUBROGATION RIGHTS OF THE FUND UNDER THE OPA

27.    The United States refers to and incorporates by reference, as though fully set forth herein, each and every paragraph of the Verified Complaint.

28.    Pursuant to the OPA, the Fund shall be subrogated to all rights, claims, and causes of action of claimants to whom it has paid compensation.

29.    As a result of the Oil Spill, the Fund has incurred or will incur costs, damages, and/or disbursements by reason of claims for removal costs and damages brought under the OPA.

30.    As responsible parties, the defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels are strictly liable, jointly and severally, to the United States for all such costs, damages, and/or disbursements sustained by the Fund in the amount of $1,562,101.78, with further claims awaiting adjudication.

31.    The aforesaid costs, damages and/or disbursements of the Fund, as provided in the OPA, are presently unascertained, but will be established at trial.

COUNT III
OPA CIVIL PENALTIES

32.    The United States refers to and incorporates by reference, as though fully set forth herein, each and every paragraph of the Verified Complaint.

33.    The OPA, at 33 U.S.C. § 1321(b)(3), prohibits the discharge of harmful quantities of oil or hazardous substances into the navigable waters of the United States, on adjoining shorelines or into the waters of the contiguous zone.

6

34.    The clarified slurry oil which was discharged as a result of the Oil Spill is a "discharge" as defined by the OPA, at 33 U.S.C. § 1321(a)(2).

35.    The OPA, at 33 U.S.C. § 1321(b)(7), provides for the imposition of civil penalties of up to $25,000 per day of violation against any person who is the owner or operator of a vessel from which oil is discharged in violation of the OPA, at 33 U.S.C. §1321(b)(3).

36.    The defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels are persons within the meaning of the OPA, at 33 U.S.C. § 1321(b)(3).

37.    The substances discharged by the EMC 423 are "oil" within the meaning of the OPA, at 33 U.S.C. § 1321(a)(1).

38.    The defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels are liable for civil penalties under the OPA, at 33 U.S.C. § 1321(b)(7), for the discharge of oil from the EMC 423 on January 19, 2005, until cleanup was completed on or about June 7, 2005.

COUNT IV
CLAIM UNDER THE RIVERS AND HARBORS ACT

39.    The United States refers to and incorporates by reference, as though fully set forth herein, each and every paragraph of the Verified Complaint.

40.    The RHA, at 33 U.S.C. § 403, prohibits the alteration or modification of any navigable water of the United States unless such work has been authorized by the Secretary of the Army.  The RHA, at 33 U.S.C. § 407, prohibits the discharge into United States'

7

navigable waters of refuse matter from a ship, barge or floating craft of any kind.

41.    No RHA permit was ever issued to defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels that authorized the alteration or modification of navigable waters of the United States in or near the waters of the Chicago Sanitary and Ship Canal, in January 2005.

42.    Defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels caused or contributed to the Oil Spill by permitting the defendant vessels to be operated in a negligent or grossly negligent manner and in an unseaworthy condition.

43.    Clarified slurry oil is refuse matter within the meaning of the RHA, at 33 U.S.C. § 407.

44.    The defendant vessels, both in combination and separately, are vessels or floating craft within the meaning of the RHA, at 33 U.S.C. § 407.

45.    The Oil Spill was not made in connection with the improvement of navigable waters or construction of public works, and was not permitted by the Secretary of the Army or the United States Environmental Protection Agency.

46.    The Oil Spill was in violation of the RHA, at 33 U.S.C. §§ 403 and 407, for which defendant Egan Marine, Inc., is strictly liable.

47.    As a result of the Oil Spill, defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels are liable, *in personam*, and the defendant vessels are liable, *in rem*, to the United States for its costs, damages, and/or disbursements, in an amount which will be established at trial.

8

COUNT V

## CLAIMS UNDER THE GENERAL MARITIME LAW

48.   The United States refers to and incorporates by reference, as though fully set forth herein, each and every paragraph of the Verified Complaint.

49.   The OPA, at 33 U.S.C. § 2751(e) and § 2718(c), preserves for the United States its general maritime remedies against each defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels, *in personam*, and the defendant vessels, *in rem*, for damages arising out of the aforementioned grounding and Oil Spill.

50.   The defendant vessels are "vessels" within the meaning of the general maritime law.

51.   At the time of the Oil Spill, the defendant vessels, as a tug and tow combination, constituted a single vessel and/or a flotilla within the meaning of the general maritime law.

52.   At the time of the events giving rise to the United States' claims, the defendant vessels were unseaworthy.

53.   Defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels negligently failed to take adequate action and precautions to insure that the defendant vessels would be operated in a safe, prudent and seaworthy manner and condition.

54.   Defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels operated, manned and equipped the defendant vessels in a negligent or grossly negligent manner.

9

55.    It was within the privity and knowledge of the defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels that the defendant vessels were unseaworthy, and operated, manned and equipped in a negligent or grossly negligent manner.

56.    The discharge of oil into navigable waters of the United States is a maritime tort for which defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels are liable *in personam*, and the defendant vessels are liable *in rem*, to the United States for costs, damages and/or disbursements, in an amount which will be established at trial.

57.    The discharge of oil into and upon the navigable waters of the United States was caused by the unseaworthiness of the defendant vessels and the negligence or gross negligence of the defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels, their officers, servants, employees, agents, crew or other individuals acting on their behalf, in a contractual capacity or with their authorization, all within the privity and knowledge of defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels.

58.    The discharge of oil from the defendant vessels into and upon the navigable waters of the United States was caused by the violation of regulations and/or statutes or other provisions designed for the prevention of marine accidents and disasters, on the part of defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels, *in personam*, and the defendant vessels, *in rem*, their officers, servants, employees, agents, crew, or other individuals and entities acting on their behalf or with their authorization.

10

59.    In particular, on information and belief a member of the crew of the LISA E was on the EMC-423 at the time of the explosion. The member of the crew was using a propane torch to heat the cargo pump of the EMC-423. The propane torch ignited explosive vapors form from an open standpipe on the EMC-423 causing the catastrophic explosion that damaged the barge and killed the person on the barge. Such use of a torch around an open standpipe while underway would also be a violation of Federal safety and operational regulations. *See, e.g.,* 46 C.F.R. §§ 35.30-5 ("The use of other than safety matches is forbidden aboard tank vessels at all times.") and 35.30-10 (no openings on tank barges without flame screens).

60.    The aforesaid violations of federal regulations and/or statutes constitute negligence *per se* on the part of defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels.

61.    Under the general maritime law the discharge of pollutants, such as clarified slurry oil, into the navigable waters of the United States is a maritime tort for which defendant Egan Marine, Inc., and/or the owners and operators of the defendant vessels are liable to the United States, *in personam*, and the defendant vessels are liable, *in rem*, to the United States for its costs, damages and/or disbursements, in an amount which will be established at trial.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, the United States of America, respectfully prays:

1.    That defendants be summoned to appear and answer this Verified Complaint;

11

2.     That the United States of America be granted declaratory judgment against the defendants for pollution removal costs or damages binding on any subsequent actions to recover further removal costs or damages, plus interest, costs, disbursements, and attorney's fees;

3.     That judgment be entered against defendants for removal costs in accordance with 33 U.S.C. § 2702, plus interest calculated in accordance with 33 U.S.C. § 2705, plus administrative and adjudicative costs and attorney's fees as allowed by 33 U.S.C. § 2715(c), pursuant to the OPA cause of action;

4.     That this honorable Court assess a judicial civil penalty against each and all of the Defendants;

5.     That any judgment entered against defendants be binding on any subsequent action or actions to recover further removal costs or damage claims;

6.     That this Court award the United States, by virtue of its maritime tort liens against the defendant vessels, judgment in an amount equal to the value of costs, damages and/or disbursements, including but not limited to:  response costs, property damages, emergency response costs, natural resource damages, lost revenues, profits and earning capacities, net costs of providing increased and additional public services during and after removal activities, and subrogation claims on behalf of the United States arising out of disbursements made from the Fund;

7.     That judgment of condemnation and sale be entered against the defendant vessels, their engines, tackle, appurtenances, etc.;

8.     That this Court award the United States its costs, damages and/or disbursements in this action;

9.     That this Court order that the limitation provisions of the OPA do not apply and that each defendant faces unlimited liability for all costs, damages and/or disbursements of the United States arising from the Oil Spill; and

10.    That this Court grant the United States such other relief as is just and appropriate.

### VERIFICATION

I, Stephen R. Campbell, Senior Trial Counsel, Torts Branch, Civil Division, United States Department of Justice, one of the attorneys for United States of America, make this verification by authority for and on its behalf. I have read the foregoing Verified Complaint, know the contents thereof, and from information officially furnished to me believe the same to be true.

I verify under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this _2nd_ day of ___June___, 2008.

_____
STEPHEN R. CAMPBELL

13

Dated: <u>June 2, 2008</u>.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

_____

STEPHEN R. CAMPBELL
Senior Trial Counsel
D.C. Bar No. 348540
Tel:   (202) 616-4026
Fax:   (202) 616-4002
stephen.campbell@usdoj.gov

ROBERT E. KELLY
Trial Attorney
Bar No. 6286571
Tel:   (202) 616-4031
Fax:   (202) 616-4002
robert.kelly@usdoj.gov

Torts Branch, Civil Division
U. S. Department of Justice
P. O. Box 14271
Ben Franklin Station
Washington, DC 20044-4271

Attorneys for Plaintiff
UNITED STATES OF AMERICA



**Michael Maher**

**From:**    Jennifer Timm [jennifer_timm@live.com]
**Sent:**    Tuesday, July 22, 2008 4:50 PM
**To:**      stephen.campbell@usdoj.gov
**Cc:**      Michael Maher; Jay Koehler
**Subject:** USA vs. EMC, case no. 08 CV 3160

Steve,

By this e-mail I'd like to confirm our telephone conversation of today's date in which you agreed to give EMC additional time, i.e. until Wednesday August 6, 2008, to answer or otherwise plead to the above-captioned matter.  I'll have the appropriate motion filed before Judge Coar to get the Court's permission for this additional time.

As I mentioned in our telephone call, EMC has retained Mike Maher and Jay Koehler of Swanson, Martin & Bell LLP in Chicago to represent us in this case.  I have carbon copied them on this e-mail.

Thank you again for your cooperation and professional courtesy in this matter.  Please contact me with any questions or if I may be of any assistance.

Jennifer Curtin Timm
Corporate Counsel
Egan Marine Corporation
15200 East Canal Bank Road
P.O. Box 669
Lemont, IL  60439
(630) 739-0947
(630) 739-4455 (fax)
Jennifer_Timm@live.com

CONFIDENTIALITY NOTICE:  This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged.  Any unauthorized review, use, disclosure or distribution is prohibited.  If you are not the intended recipient, please notify the sender by e-mail and destroy all copies of the original message.

Use video conversation to talk face-to-face with Windows Live Messenger. Get started.

# EXHIBIT C

| Incident Name:    Barge EMC 423 | Location:    Stickney, IL |

U.S. Department of
Homeland Security

**United States
Coast Guard**

Commanding Officer
United States Coast Guard
Marine Safety Office Chicago

215 W. 83rd Street, Suite D
Burr Ridge, IL 60527
Phone: (630) 986-2155
FAX: (630) 986-2120

16732
January 24, 2005

Egan Marine
Attn: Dennis Egan, c/o Tom Neumann
PO Box 669
Lemont, IL  60439

Dear Mr. Egan:

Per our discussion on January 21, 2004, you are not to access the number one cargo hold on barge EMC 423 without first consulting me. As the lead investigator assigned to this marine casualty, it is my responsibility to ensure that the integrity of all evidence is maintained.

If you have any questions please contact LT Mike Reed of my staff at (630) 986-2133.

Sincerely,

J. M. HAMILTON
Commander, U.S. Coast Guard
Investigating Officer



**EXHIBIT D**

U.S. Department of
Homeland Security

United States
Coast Guard

Commanding Officer
United States Coast Guard
Marine Safety Office

215 West 83rd Street, Suite D
Burr Ridge, Illinois, 60527
Staff Symbol:
Phone: (630) 986-2155
FAX: (630) 986-2174

16600
18 May 2005

Dennis H. Egan, President
Egan Marine Corporation
15200 Canal Bank Road
P.O. Box 669
Lemont, IL  60439

Subj:  CAPTAIN OF THE PORT CHICAGO ORDER (12-05)

As Captain of the Port (COTP), under Title 33, United States Code, Section 1223, and Title 33, Code of Federal Regulations, Part 6, I herby order you to remove the oil from the T/B EMC423 no later that May 28th, 2005. The EMC423 is no longer certified or fit for service to carry oil or hazardous material in accordance with 46 CFR § 31.01.

Pursuant to CDR Mark Hamilton's letter to you dated May 17, 2005, you shall not, nor shall you allow anyone else to physically alter the condition of the barge or any of it's components in any way, to include but not limited to any cutting, grinding, disassembling, or altering valve positions, hull or deck plating, debris removal or product removal without obtaining written permission from the Coast Guard. Any actions taken by you, your staff, or contractors which would spoliate existing evidence or otherwise obstruct CDR Hamilton's investigation could result in serious legal consequences.

I understand that you may require 24–48 hours to stage equipment and personnel for this oil removal and trans    operation. You may not begin any work until you have notified me and I have personnel on scene to monitor and approve any actions related to this cargo transfer.

The enforcement provisions of Title 33, United States Code, § 1232, provides that a violation of this order is punishable by a civil penalty of not more than $25,000, with each day of continuing violation constituting a separate violation. A willful and/or knowing violation of this order is a federal criminal offense, punishable as a Class D felony by imprisonment of not more than six years and/or a maximum fine of not more than $500,000.

Any person directly affected by this order may request reconsideration orally or in writing. You also have the right to appeal this order to the Commander, Ninth Coast Guard District. Appeals must be submitted to the COTP in writing. The appeals process contained in Title 33, CFR § 160.7 has been adopted for purposes of this Order.

T. W. CARTER
Captain, U. S. Coast Guard
Captain of the Port

Acknowledgement of delivery:

Signature: _____  Title: _____

Date: ___5/18/05___  Time: ___1815___

# EXHIBIT E

**U.S. Department of**
**Homeland Security**

**United States**
**Coast Guard**



Commander
United States Coast Guard
Sector Los Angeles/Long Beach

1000 South Seaside, Bldg 20
San Pedro, CA  90731
Phone:  (312) 521-3601
Fax:     (312) 521-3639

16460
March 18, 2008

Egan Marine Corporation
Attn:  Dennis Egan
15200 Canal Bank Rd.
P. O. Box 669
Lemont, IL  60439

Dear Mr. Egan:

On January 19, 2005, the T/B EMC 423 (O.N.547814) loaded Clarified Slurry Oil (CSO), exploded and subsequently sank killing one crewmember in the vicinity of the Citgo Petroleum Corporation dock located in Cicero, IL.  This incident resulted in a large amount of barge debris from the incident being stored at the Citgo property.

The material stored at the facility was necessary to facilitate the One-Man Formal Board of Investigation into the cause of the explosion, sinking, and loss of life.  On August 8, 2005 you requested that the evidence be returned to you, but at that time my investigation was still active.  However, it has been determined that the need to retain the large amount of material is no longer necessary.  Accordingly, the material is hereby released to you for removal from the Citgo Petroleum facility located at 3737 South Cicero Ave, Cicero, IL.  Your expedient removal of the material from the facility would be greatly appreciated.

The evidence being released to you includes all of the debris that the Coast Guard has in it's possession, except for the following items which have been retained by the Coast Guard Investigative Service as evidence:  cargo pump with gearbox, cargo pump sled, stand pipe, rose bud, section of cargo pipe with section of heat tracing piping attached, cargo pipe header, 25' section of cargo pipe, four (4) sections of small piping, two (2) "EMC-423" placards, one (1) "Marine Corporation" cowling, and a bucket of assorted valves and bolts.

If you have any questions, please don't hesitate to call me.

Sincerely,

H. M. HAMILTON
Captain, U. S. Coast Guard
Senior Investigating Officer

Copy:     USCG District Nine (dp)
          USCG Sector Lake Michigan
          USCG Marine Safety Unit Chicago
          USCG CGIS Resident Agent In Charge Chicago
          Citgo Petroleum Corporation



**CITGO Petroleum Corporation**

**CITGO**

3737 South Cicero Avenue
Cicero, Illinois 60804-4577
(708) 780-5700
Fax (708) 780-5759

Egan Marine Corporation
15200 East Canal Bank Road
Lemont Illinois, 60439

May 7, 2008

Dear Sir:

This letter is being sent to instruct you to remove the remaining debris from the EMC 423 from our barge facility which is located on the Chicago Sanitary and Ship Canal at mile marker 317.4, north bank. It is part of our facility which is located at 3737 Cicero Avenue, Cicero Illinois, within sixty (60) days from the date of this letter. If after sixty days the debris have not been removed from our facility CITGO Petroleum Corporation shall consider them to have been abandon and will dispose of said debris.

Please call me at your earliest convenience to arrange for the removal of the material. I can be reached at 708 780 5736.

Sincerely,

Charles G. Stark
Plant Manager
CITGO Petroleum Corporation
3737 s. Cicero Avenue, Cicero Illinois 60804



**EXHIBIT G**

Windows Live

## FW: Barge Debris

From: **LeBlanc, J. Dwight** (Leblanc@chaffe.com)
Sent: Tue 7/08/08 12:22 PM
To: jennifer_timm@live.com

---

**From:** LeBlanc, J. Dwight
**Sent:** Tuesday, July 08, 2008 12:06 PM
**To:** 'jenniffer_timm@live.com'
**Cc:** 'Stark, Chuck'; 'wmarwedel@mmr-law.com'
**Subject:** Barge Debris

Ms Timm
Confirm our tel conversation with you this morning where Chuck Stark and I informed you that USCG has taken every thing they need from debris of Eagan's Barge. This has been on CITGO's property for over 3 years. Citgo has previously asked prior counsel of Eagan - Warren J Marwedel to remove Barge Debris and if Eagan does not remove it in 15 days or by close of business on July 26, 2008 Citgo shall have it removed and if any cost incurred this shall be responsibility of Eagan.
j dwight leblanc jr
Attorney for CITGO


J. Dwight LeBlanc, Jr.
Chaffe McCall. L.L.P.
2300 Energy Centre
1100 Poydras Street
New Orleans, LA  70163-2300
Telephone:  504-585-7013
Cell: 504-289-6810
Facsimile:  504-544-6052
E-mail:  leblanc@chaffe.com



**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08 CV 3160 |
| | ) | |
| EGAN MARINE, INC., in personam, MOTOR | ) | Judge Coar |
| VESSEL LISA E, in rem, and TANK BARGE | ) | |
| EMC-423, in rem, | ) | Magistrate Judge Cox |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT OF CHARLES C. ROBERTS, JR., PH.D., P.E.**

I, Charles C. Roberts, Jr., Ph.D., P.E., being an adult resident of the State of Illinois and of sound mind, first being duly sworn on oath, depose and state as follows:

1.  I am the President of C. Roberts Consulting Engineers, Inc. located at 46W192 Granart Road. Big Rock, Illinois.

2.  I have personal knowledge of the facts contained within this affidavit and could competently testify regarding the same if called upon to do so.

3.  I am an engineering consultant in the areas of accident reconstruction, failure analysis, structural analysis, heat transfer, fire origin analysis, computer analysis, mechanics and biomechanics.

4.  The evidence from the EMC 423 explosion which is currently being stored at CITGO Petroleum Corporation's barge facility in Cicero, Illinois, including the deck plating which was removed from the EMC 423 the salvage operations, would be relevant and material to developing my opinions regarding the cause of the January 19, 2005 barge explosion.

5.  In my opinion, this evidence should not be destroyed, altered or tampered with in any manner until such time as all parties, actual or potential, have had an opportunity to properly examine it.

FURTHER AFFIANT SAYETH NOT.

_____
Charles C. Roberts, Jr., Ph.D., P.E.



Law Offices

# MARWEDEL, MINICHELLO
# & REEB, P.C.

A Professional Corporation

SUITE 720
10 SOUTH RIVERSIDE PLAZA
CHICAGO, ILLINOIS 60606
(312) 902-1600
FAX (312) 902-9900

FILE NUMBER      21561-001

EXTENSION      5208

E-MAIL:      bryan@mmr-law.com

May 15, 2008

Captain H. M. Hamilton
United States Coast Guard
1000 South Seaside, Building 20
San Pedro, CA 90731

Re:    **Egan Marine Corporation**

Dear Captain Hamilton:

I am writing in response to your letter of March 18, 2008, to Dennis Egan of Egan Marine Corporation. In your letter you stated that you have determined that you no longer need to retain the material from the explosion and sinking of the Barge EMC 423 that is currently located at the Citgo Petroleum Corporation dock in Cicero, Illinois. The letter released the material to Egan Marine Corporation. As you know, Egan Marine Corporation salvaged the material from the Chicago Sanitary & Ship Canal and placed the material on a deck barge. The Coast Guard required that the material be removed from the deck barge and placed on the Citgo property so that the Coast Guard could conduct its investigation. If it were not for the Coast Guard's requirement that the material be stored on the Citgo property, Egan Marine Corporation would have been able to transport the material to its ship yard in Lemont, Illinois without having to remove the material from the deck barge and place it on the Citgo facility, and now take the material from the Citgo facility and put it back on a deck barge.

Egan Marine Corporation intends to take possession of all material released by the Coast Guard located at the Citgo facility. However, it is Egan Marine Corporation's position that the Coast Guard should bear the expense of loading the material onto a deck barge so that the material can be transported away from the Citgo facility by Egan Marine. If it were not for the Coast Guard requirement that the material be taken off the deck barge and placed onto the property of Citgo, the material could have been removed from the scene of the explosion without ever being placed on the Citgo property. Therefore, the cost of loading the material onto a deck barge to remove it from the Citgo facility should be borne by the Coast Guard. Egan Marine Corporation will bear the expense of transporting the material once it has been loaded onto the barge.

Captain H. M. Hamilton
May 15, 2008
Page 2

Please advise me of the Coast Guard's position with regard to this matter.

Very truly yours,

William P. Ryan

WPR:mek
cc:     Dennis Egan
        Jennifer Timm
        Warren J. Marwedel
21561001.MH2



**EXHIBIT J**

**U.S. Department of Homeland Security**

**United States Coast Guard**



Commander
Ninth Coast Guard District

1240 East Ninth Street
Cleveland, OH 44199
Staff Symbol: (dl)
Phone: (216)902-6010
Fax:    (216)902-6055
Email matthew.w.merriman@uscg.mil

16450
July 11, 2008

Mr. William P. Ryan
Marwedel, Minichello, & Reeb, P.C.
Suite 720
10 South Riverside Plaza
Chicago, Illinois 6060

Dear Mr. Ryan:

I am writing in response to your letter of May 15, 2008 to Captain Mark Hamilton. Captain Hamilton has forwarded his investigation report for review by higher authorities and this matter is not a part of his current duites. Therefore, please direct all further correspondence to the Ninth Coast Guard District.

As you are aware, the Coast Guard has released material from the explosion and sinking of the EMC-423 to Egan Marine Corporation. These materials are not needed by the Coast Guard or the United States Attorney's office. The Coast Guard will not move Egan Marine Corporation's material or pay for the removal of this material from the CITGO facility. If Egan Marine Corporation believes it has a valid claim against the Coast Guard for removal of this material, then it may file a claim and its supporting documentation with the Coast Guard's Maintenance and Logistics Command Atlantic (MLC). The MLC Claims website is: http://www.uscg.mil/mlclant/ldiv/branch_claims_and_litigation.asp.

If you have any questions do no hesitate to call me at (216) 902-6012 or Lieutenant Commander Dean Firing at (216) 902-6051.

Sincerely,

MATTHEW W. MERRIMAN
Lieutenant Commander
U.S. Coast Guard

Copy:     (dp)
          MLCLANT (lc)
          CG-0945
          CAPT Mark Hamilton
          Joel Levin, AUSA
          Jennifer Timm       —
          CITGO Petroleum Corp.



**EXHIBIT K**