**UNITED STATES OF DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>EGAN MARINE CORPORATION, *in* )<br>*personam,* MOTOR VESSEL LISA E, *in rem,* )<br>TANK BARGE EMC-423, *in rem,* )<br><br>Defendants. ) | Civil Action No. 1:08-cv-3160<br><br>Judge Coar<br>Magistrate Cox<br><br><br><br><br><br>In Admiralty |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR**
**MOTION TO DISMISS COUNTS IV AND V**
**OF THE AMENDED VERIFIED COMPLAINT**

Defendants Egan Marine Corporation, Motor Vessel LISA E and Tank Barge EMC-423
(hereinafter collectively "EMC"), by counsel, submit this Memorandum in Support of their
Motion to Dismiss Counts IV and V of Plaintiff's Amended Verified Complaint ("Complaint").

## I.  INTRODUCTION

On July 24, 2008, Plaintiff United States filed an Amended Verified Complaint against
EMC containing five counts: Claims under the Oil Pollution Act ("OPA") (Count I); Subrogation
Rights of the Oil Spill Liability Trust Fund (the "Fund") under OPA (Count II); OPA Civil
Penalties (Count III); Claim under the Rivers and Harbors Act (Count IV); and Claims under the
General Maritime Law (Count V).  In response, on August 26, 2008, Defendant EMC filed an
Answer and Motion to Dismiss.  This Memorandum is in support of the Motion to Dismiss.

Plaintiff United States' Complaint is a legal action to recover alleged removal costs incurred directly by the Fund, and removal costs and damages allegedly incurred by the Fund through compensation paid to third party claimants. These damages were allegedly incurred pursuant to the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701 *et seq.* Counts I, II and III of the Complaint state proper claims for the recovery of these alleged costs pursuant to OPA. However, Counts IV and V fail to state proper claims because these counts are based on statutory and common law authorities that are preempted by OPA and otherwise unavailable to the United States.

According to the Complaint, all damages claimed by the Plaintiff were paid by the Fund and/or were otherwise recoverable pursuant to OPA. As a consequence, OPA is the only statutory authority for recovering these Funds. Plaintiff identifies no alleged damages that are unrecoverable under OPA, and therefore resorting to the Rivers and Harbors Act (hereinafter "RHA") and the General Maritime Law to recover damages that are authorized pursuant to OPA is improper and must be dismissed. Furthermore, unlike OPA claims and RHA claims, General Maritime Law claims are not exempt from the Limitation of Liability Act of 1853 and therefore must have been filed in EMC's Limitation Action, *In re Egan Marine Corporation* (N.D. Ill. Case No. 1:05-cv-4074)("Limitation Proceeding"), which is presently pending before the Honorable Milton Shadur.[1] Although Plaintiff was successful in dismissing the Clean Water Act and OPA claims and the RHA claim from the Limitation Proceeding by Order of December 19, 2005, the United States did not request that the General Maritime Law claims be dismissed from the Limitation Proceeding and they were not released to be pursued outside the Limitation

---

[1] The Limitation Proceeding was originally assigned to the Honorable Mark Filip. It was reassigned to Judge Shadur on March 6, 2008.

Proceeding. As a result, the General Maritime Law claim is barred by the Egan Marine limitation injunction.

## II. ALLEGED FACTS

Plaintiff United States alleges that it is asserting claims on behalf of the Fund pursuant to OPA to recover removal costs incurred directly by the Fund, as well as removal costs and damages incurred through payments made by the Fund to third-party claimants. (Complaint ¶ 4). Those claims arise out of an explosion on board the EMC-423 on or about January 19, 2005, which resulted in the discharge of clarified slurry oil into the Chicago Sanitary and Ship Canal (the "Oil Spill"). (Compl. ¶¶ 10-11). Plaintiff alleges the amount of these payments is $1,562,101.78 with additional claims pending. (*Id.* at ¶ 4).

Plaintiff alleges that it responded to the oil spill in the Chicago Sanitary and Ship Canal beginning on January 19, 2005 and incurred pollution removal and others costs in connection with the clean up and other response efforts. (Complaint ¶ 15). Plaintiff alleges that as a result of the oil spill and the threat of discharge of oil, it has incurred and will continue to incur substantial costs associated with removal and response activities, enforcement of the action, damages, costs and/or disbursements. (Complaint ¶ 17).

Pursuant to OPA, each responsible party is liable to the United States for its removal costs, damages, and/or disbursements. (Complaint ¶ 20). Furthermore, the United States alleges that it has incurred costs, damages, and/or disbursements by reason of claims for removal costs and damages brought by third-parties, which are also compensable. (Complaint ¶ 29). Finally, Plaintiff alleges that pursuant to these costs and claims, the Fund has expended $1,562,101.78. (Complaint ¶¶ 26, 30).

Plaintiff has failed to allege any particular cost, damages and/or disbursements that have been incurred by the United States outside the Fund obligations, which are all made pursuant to OPA.

On July 14, 2005 EMC filed the Limitation Proceeding to require all claimants with any interest in the Oil Spill and related explosion to bring forth their claims against EMC. Plaintiff United States filed a claim in that action on September 8, 2005 asserting various claims, both under OPA, the RHA and the General Maritime Law. As is the practice with limitation actions, on August 9, 2005 an injunction was issued barring any further claims against EMC not timely brought before the Court in the Limitation Proceeding. (R. 20, attached as Ex. A).[2]

On December 8, 2005, the United States moved the Court to modify the injunction order to permit the United States to proceed separately on its OPA, Clean Water Act and RHA claims. (R. 61, attached as Ex. B). By Order of December 19, 2005 the Court granted the United States' motion, granted permission to proceed separately on the OPA, Clean Water Act and RHA claims and dismissed the United States from the Limitation Proceeding. (R. 64, attached as Ex. C). The United States did not request, and the Court did not grant permission to pursue any General Maritime Law action outside the Limitation Proceeding.

On July 24, 2008 Plaintiff filed the Amended Verified Complaint which included not only the OPA and RHA claims, but also a claim under the General Maritime Law. (Complaint ¶¶ 48 – 61).

## III. <u>STANDARD OF REVIEW</u>

Defendant EMC seeks dismissal of Counts IV and V of the Amended Verified Complaint because both causes of action are pre-empted by OPA and therefore do not state a claim upon which relief can be granted. Furthermore, Count V is barred by the injunction order issued by

---

[2] Citations to R. ___ refer to the docket in the Limitation Proceeding.

this Court on August 9, 2005 in the Limitation Proceeding. Under Federal Rule of Civil

Procedure 12(b)(6), this Court may take judicial notice of matters of public record, including

public court documents filed in other proceedings, in deciding Defendants' Motion. *Henson v.*

*CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). Courts will assume that all facts alleged in

the Complaint are true and construe the allegations in the Plaintiff's favor. *Tamayo v.*

*Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

## IV. ARGUMENT

### A.    The United States' RHA Count (Count IV) Should Be Dismissed.

The Amended Verified Complaint, reduced to its simplest terms, is an effort by the

United States to recover its pollution response costs and those costs and damages paid by the

Fund to third-party claimants. The Complaint clearly establishes that these amounts were paid

by the Oil Pollution Liability Trust Fund, which is authorized to make payments only in

accordance with the Oil Pollution Act. 33 U.S.C. § 2712.

By enacting the Oil Pollution Act, Congress established an intricate framework for

establishing sources of liability (33 U.S.C. § 2702), defenses to liability such as acts of God, acts

of war and actions of third parties (33 U.S.C. § 2703), and limitations of liability (33 U.S.C. §

2704). By pursuing recovery for oil spill damages under the common law (general maritime law)

or old, inadequate statutory provisions such as the Rivers and Harbors Act, Plaintiff is

circumventing this intricate framework.

For instance, Plaintiff alleges in the Complaint that the Rivers and Harbors Act is a strict

liability statute. (Complaint ¶ 46). By pursuing recovery under the Rivers and Harbors Act as

well as OPA, Plaintiff is attempting to employ a statute that will avoid the defenses to liability

and limitations on liability provided by OPA. Plaintiff, in its Memorandum in Support of its

Motion to Lift the Injunction in the Limitation Proceeding, argued that OPA was a successor

statute to the Limitation of Liability Act of 1853 and therefore preempted that Act.  (R. 61-3 at

2-6, attached as Ex. B).  Plaintiff quoted the OPA, 33 U.S.C. § 2702(a), which states:

> Notwithstanding any other provision or rule of law, and subject to the provisions
> of this chapter, each responsible party for a vessel or facility from which oil is
> discharged, or which poses the substantial threat of a discharge of oil, into or upon
> the navigable waters or adjoining shorelines or the exclusive economic zone is
> liable for the removal costs and damages specified in subsection (b) that result
> from such incident.

(*Id.* at 2-3) (emphasis in Plaintiff's brief).  Plaintiff correctly argued that this provision preempts

all other provisions of Federal law with regard to oil pollution damages and therefore the

Limitation of Liability Act could not be employed to reduce liability under OPA.  It has been

long held that the general maritime law, the Rivers and Harbors Act, and specifically the Refuse

Act (33 U.S.C. § 407), are preempted by the Clean Water Act. *See Kyoei Kaiun Kaisha, Ltd. v.*

*M/V BERING TRADER,* 760 F.Supp. 174 (W.D. Wash. 1991).  The United States Supreme Court

in the case of *City of Milwaukee v. Illinois,* 451 U.S. 304, 317 (1981) stated that when Congress

"speaks directly" to a question or addresses a problem which has previously been settled by

federal common law, the prior federal common law is preempted.  In this case, the Clean Water

Act, which has now been modified by the OPA, preempted the Refuse Act because the Refuse

Act did not identify any remedies or terms of liability.  As a result, liability and remedies under

the Refuse Act had been established by the judiciary as a part of the federal common law. *In re*

*Oswego Barge Corp.*, 664 F.2d 327, 340 (2d Cir. 1981).

Just as OPA has specific limitation provisions which preempt the Limitation of Liability

Act, OPA also contains liability provisions and defenses to liability that are tied directly to the

obligation to pay for oil spill recovery costs and damages. These provisions would serve to

preempt the RHA for damages incurred under OPA.  In sum, by permitting the United States to

recover for oil spill removal and recovery costs and third party damages pursuant to the general maritime law and/or the RHA, the Court would allow the United States to circumvent all the protections intentionally provided to responsible parties under OPA and therefore would essentially make OPA a nullity for responsible parties while allowing the United States to claim full benefit of the Act. Consequently, the RHA Claim (Count IV) and the general maritime law claim (Count V) should be dismissed.

**B.    The General Maritime Law Claim Is Barred By Injunction**

On August 9, 2005 Judge Filip in the Limitation Proceeding issued a Notice and Injunction summoning all parties with claims against Egan Marine Corporation to appear and make a claim pursuant to the Limitation of Liability Act of 1853. (R. 20, attached as Ex. A). Plaintiff made such a claim, including general maritime law causes of action, and proceeded on December 8, 2005 to file a Motion to Lift the Stay for the Clean Water Act, Oil Pollution Act and Rivers and Harbors Act claims. (R. 61-2, attached as Ex. B). Judge Filip issued an Order permitting those claims to be pursued outside the Limitation Proceeding and dismissing the United States from the action. (R. 64, attached as Ex. C)

Plaintiff United States did not argue that federal common law claims under the General Maritime Law were exempt from limitation proceedings merely because the subject of the claim was oil pollution recovery expenses. There appears to be no case law to support such a contention. As such, it appears the United States was willing to sacrifice its General Maritime Law claim to be dismissed from the Limitation Proceeding. In addition to the preemption arguments set forth above, Defendant EMC respectfully requests that the General Maritime Law claim be dismissed on the basis that this claim should have been retained in the Limitation Proceeding, if at all, and Plaintiff's failure to obtain an Order permitting the General Maritime

Law to be pursued outside the Limitation Proceeding means that it is now barred by the

Injunction Order of August 9, 2005.

## V. <u>CONCLUSION</u>

This Honorable Court should dismiss Count IV (Rivers and Harbors Act) and Count V

(General Maritime Law) on the bases that these claims are preempted by the Clean Water Act as

amended by the OPA, and that the General Maritime Law claim is additionally barred by the

injunction issued in the Limitation Proceeding, *In re Egan Marine Corporation* (N.D. Ill. Case

No. 1:05-cv-4074).

Respectfully Submitted,

/s/ Christopher H. White
Attorney for Defendants

Christopher H. White (Bar No. 6280031)
ROSS, DIXON & BELL, LLP
55 West Monroe Street
Suite 3000
Chicago, Illinois 60603
(312) 759-1920 (telephone)
(312) 759-1939 (facsimile)

Of Counsel:

David H. Sump (Pending *pro hac vice* application)
Christopher A. Abel (Pending *pro hac vice* application)
TROUTMAN SANDERS, LLP
150 West Main Street
Suite 1600
Norfolk, Virginia 23510
(757) 640-0004 (telephone)
(757) 687-7510 (facsimile)

Jennifer Curtin Timm (Bar No. 6229091)
Egan Marine Corporation
15200 East Canal Bank Road
P.O. Box 669
Lemont, Illinois 60439
(630) 739-0947 (telephone)
(630) 739-4455 (facsimile)

## CERTIFICATE OF SERVICE

I, the undersigned attorney, certify that on this 26th day of August, 2008, I caused a true and complete copy of the foregoing pleading to be served on the following counsel by electronic means through use of the Court's CM/ECF system:

Stephen R. Campbell
Senior Trial Counsel
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 14271
Ben Franklin Station
Washington, DC 20044
E-mail: stephen.campbell@usdoj.gov

Eric Pruitt
United States Attorney's Office,
Northern District of Illinois
219 South Dearborn Street, Suite 500
Chicago, Illinois 60604
E-mail: eric.pruitt@usdoj.gov

/s/ Christopher H. White
Attorney for Defendants

Christopher H. White (Bar No. 6280031)
ROSS, DIXON & BELL, LLP
55 West Monroe Street
Suite 3000
Chicago, Illinois 60603
(312) 759-1920 (telephone)
(312) 759-1939 (facsimile)

Of Counsel:

David H. Sump (Pending *pro hac vice* application)
Christopher A. Abel (Pending *pro hac vice* application)
TROUTMAN SANDERS, LLP
150 West Main Street
Suite 1600
Norfolk, Virginia 23510
(757) 640-0004 (telephone)
(757) 687-7510 (facsimile)

Jennifer Curtin Timm (Bar No. 6229091)
Egan Marine Corporation
15200 East Canal Bank Road
P.O. Box 669
Lemont, Illinois 60439
(630) 739-0947 (telephone)
(630) 739-4455 (facsimile)





# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS,
### EASTERN DIVISION

| | | |
|---|---|---|
| In the Matter of the Complaint of | ) | Case No. 05 C 4074 |
| EGAN MARINE CORPORATION, | ) | |
| Owner of the Motor Vessel "LISA E" and | ) | Judge Filip |
| the Barge EMC 423, for Exoneration from | ) | |
| or Limitation of Liability, | ) | Magistrate Judge Denlow |
| | ) | |
| Plaintiff | ) | In Admiralty |

## ORDER FOR NOTICE AND INJUNCTION

A Complaint having been filed in this Court on the 14th day of July, 2005, by Plaintiff,

EGAN MARINE CORPORATION, as owner and operator of the Motor Vessel LISA E and the

barge EMC 423, claiming the benefit of limitation of liability as provided in 46 U.S.C. App.

§§183-189, and all acts amendatory thereof and supplemental thereto, and also contesting any

liability on its part on account of the matters and things alleged in the said Complaint,

independently of limitation of liability claimed, for any losses, injuries, deaths, expenses or

damages resulting or arising from and claiming the right to exoneration from or limitation of

liability for any and all claims arising out of an accident on January 19, 2005, as a result of an

explosion and fire aboard the barge EMC 423 while the barge was in the tow of the Motor Vessel

LISA E on the Chicago Sanitary and Ship Canal, at or near the Cicero Avenue Bridge, in

Stickney, Illinois, as described in the Complaint now on file in the Clerk's Office of this Court,

in which the Plaintiff, among other things, demands that a notice be issued by this Court to all

persons asserting claims with respect to which the Complaint seeks limitation, admonishing them

to file their claims and respective Answers to the Complaint and also demanding that an order be

issued enjoining the institution or prosecution of any action or proceeding against the Plaintiff or

the Motor Vessel LISA E and the barge EMC 423 with respect to any claims subject to limitation

in this action, and further demanding that this Court adjudge that the Plaintiff and the Motor

Vessel LISA E and the barge EMC 423 are not liable in any way for any losses, injuries, deaths,

expenses, damages or any claims whatsoever arising out of the accident aforesaid, but, if the

Plaintiff should be adjudged liable, then such liability to be limited to the amount or value of the

Plaintiff's interest in the Motor Vessel LISA E and the barge EMC 423 and her pending freight

at the termination of the voyage on which the Motor Vessel LISA E and the barge EMC 423

were engaged at the time of the accident; and

     The Complaint herein alleging facts and circumstances upon which exoneration from or

limitation of liability are claimed and a Stipulation for Costs and an Ad Interim Stipulation for

Value having been executed and filed on behalf of the Plaintiff, together with an approved

surety, in the sum of One Hundred Seventy-Five Thousand Dollars ($175,000.00), together

with interest at the rate of six percent (6%) per annum, for a period of two (2) years, from the

date of the Stipulation, and costs in the sum of $250.00, which Stipulation and Bond Plaintiff

undertakes to pay into this Court within five (5) days after the entry of an Order confirming the

approval of the security or a final appraisal of the value of the Plaintiff's interest in the Motor

Vessel LISA E and the barge EMC 423, and the freight, said final appraisal to be ordered by this

Court upon application of any party in interest, the amount or value of such interest, or approved

security therefore, and that pending payment into this Court of the amount or value of the

Plaintiff's interest in the Motor Vessel LISA E and the barge EMC 423 and its pending freight,

or the giving of approved security therefore, the said Ad Interim Stipulation for Value shall stand

as security for all claims in this proceeding.

     Upon application of the Plaintiff herein, it is HEREBY ORDERED:

1.    That the Ad Interim Stipulation for Value be and the same hereby is approved as security for the value of the Plaintiff's interest in the Motor Vessel LISA E and the barge EMC 423 and its pending freight and the costs of this proceeding;

2.    That a notice issue out of and under the seal of this Court against all persons or entities asserting claims in respect to which the Plaintiff seeks exoneration from or limitation of liability admonishing them to file their respective claims with the Clerk of this Court and to serve on the attorneys for the Plaintiffs a copy thereof on or before the 12th day of September, 2005, and citing any Claimant, who desires to contest either the right to exoneration from or the right to limitation of liability, to file and serve an Answer to the Complaint, unless the Answer is included in the claim;

3.    That the said notice be published in the *Chicago Daily Law Bulletin*, a newspaper of general circulation in this jurisdiction, once a week for four (4) consecutive and successive weeks prior to the date fixed for the filing of claims, and that not later than the day of the second publication, the Plaintiff shall mail a copy of the notice to every person or other entity known to have made any claim arising against the Motor Vessel LISA E and the barge EMC 423, or the Plaintiff arising out of the voyage on which the claims sought to be limited arose, and in addition, a copy of the notice shall be mailed to the last known address of the decedent Alexander Oliva pursuant to Supplemental Rule F(4);

4.    That each and every person or other entity claiming any losses, injuries, deaths, expenses or damages by or in consequence of the matters and things set forth in the Complaint be and they hereby are enjoined, in accordance with the demand in the Complaint, from the further prosecution of any such claim which may be subject to exoneration or limitation, or from instituting or prosecuting any action which may be subject to exoneration or limitation in any

Court, or taking any legal proceedings whatsoever in any proceeding other than this one, for any losses, injuries, deaths, expenses or damages occasioned by or in consequence of the accident referred to in said Complaint and which are or may be subject to exoneration or limitation;

     5.     That service of this Order as an injunction be made within and outside of this District by mail to all persons, corporations or other entities, or their attorneys, of whom Plaintiff has knowledge have filed or given notice of claims and who are to be enjoined, including to Alexander Oliva's last known address.

     Dated at Chicago, Illinois, this _____ day of August, 2005.

                          _____
                          United States District Judge

Prepared By:

Warren J. Marwedel  (01785109)
William P. Ryan (06183496)
Dennis Minichello (03122059)
Shari L. Friedman (6193095)
Marwedel, Minichello & Reeb, P.C.
10 S. Riverside, Suite 720
Chicago, IL  60606
312/902-1600

4

B

# UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |
|---|---|
| In the Matter of the Complaint of, ) | Civil Action No. **05-cv-04074** |
| EGAN MARINE CORPORATION, ) | |
| Owner of the Motor Vessel "LISA E" and ) | Judge Filip |
| the Barge EMC 423, for Exoneration from ) | |
| or Limitation of Liability ) | Magistrate Judge Denlow |
| ) | |
| | In Admiralty |

## UNITED STATES' MOTION TO LIFT OR MODIFY THE ORDER
## FOR NOTICE AND INJUNCTION, FILED AUGUST 5, 2005

The United States of America respectfully moves this honorable Court for an Order lifting

or modifying the "Order for Notice and Injunction," filed August 5, 2005, and permit the United

States to proceed separately to pursue its claims under the Oil Pollution Act of 1990, at 33 U.S.C.

§§ 2701, *et seq.*, the Clean Water Act, at 33 U.S.C. §§ 1251, *et seq.*, and the Rivers and Harbors Act,

at 33 U.S.C. §§ 401, *et seq.*  Such action is appropriate as the Limitation of Liability Act of 1851,

at 46 U.S.C. §§ 183, *et seq.*, and Rule F of the Supplemental Rules for Certain Admiralty and

Maritime Cases are inapplicable to claims of the United States asserted under those statutes.

Furthermore, the United States moves that it be dismissed, without prejudice, from this action.

In support of this motion, the United States submits its "Memorandum of Law in Support of

United States' Motion to Lift or Modify the Order for Notice and Injunction, filed August 5, 2005."

Dated:  <u>December 8, 2005</u>.

                                     Respectfully submitted,

                                     PETER D. KEISLER
                                     Assistant Attorney General

                                     STEPHEN R. CAMPBELL
                                     Trial Attorney
                                     D.C. Bar No. 348540
                                     Torts Branch, Civil Division
                                     U. S. Department of Justice
                                     P. O. Box 14271
                                     Ben Franklin Station
                                     Washington, DC  20044-4271
                                     Tel:    (202) 616-4026
                                     Fax:    (202) 616-4002
                                     stephen.campbell@usdoj.gov
                                     Attorneys for Claimant
                                     UNITED STATES OF AMERICA

**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| In the Matter of the Complaint of, EGAN MARINE CORPORATION, Owner of the Motor Vessel "LISA E" and the Barge EMC 423, for Exoneration from or Limitation of Liability | ) ) ) ) ) ) ) | Civil Action No. **05-cv-04074** Judge Filip Magistrate Judge Denlow In Admiralty |

**MEMORANDUM OF LAW IN SUPPORT OF UNITED
STATES' MOTION TO LIFT OR MODIFY THE ORDER
FOR NOTICE AND INJUNCTION, FILED AUGUST 5, 2005**

Claimant, the United States of America, hereby submits this memorandum of law in support of its motion to lift or modify the "Order for Notice and Injunction," filed August 5, 2005 ("Injunction"), and permit it to proceed separately to pursue its claims under the Oil Pollution Act of 1990 ("OPA"), at 33 U.S.C. §§ 2701, *et seq.*, the Clean Water Act ("CWA"), at 33 U.S.C. §§ 1251, *et seq.*, and the Rivers and Harbors Act ("RHA"), at 33 U.S.C. §§ 401, *et seq.* Such action is appropriate as the Limitation of Liability Act of 1851 ("Limitation Act"), at 46 U.S.C. §§ 183, *et seq.*, and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Cases ("Rule F") are inapplicable to claims of the United States asserted under those statutes, and dismiss the United States claims in this action without prejudice. Furthermore, the United States moves that it be dismissed, without prejudice, from this action.

## STATEMENT OF THE CASE

On January 19, 2005, the tank barge EMC 423, under the control of the M/V LISA E, exploded with the loss of one life and sank in the Chicago Sanitary and Ship Canal, a navigable water of the United States, discharging some of its cargo of clarified slurry oil into the Canal ("Oil Spill"). *See* Clerk's file, Doc. No. 26. Egan Marine Corporation ("Limitation Petitioner") has

alleged that it is and was at all material times the owner of both these vessels. *See* Clerk's file, Doc. No. 1. At the time of the explosion, the EMC 423 was carrying a cargo of approximately 14,000 barrels of clarified slurry oil. The explosion damaged both vessels and other property, obstructed the waterway, and discharged a significant quantity of the cargo of clarified slurry oil into the navigable waters of the United States. As a result of the explosion and Oil Spill from the EMC 423, the United States took action to respond and remove the oil and restore the surrounding environment. Consequently, the United States has incurred certain costs and damages.

On July 14, 2004, Egan Marine Corporation ("Limitation Petitioner") filed its "Complaint for Exoneration from or Limitation of Liability" seeking to avoid or limit its liability for the Oil Spill pursuant to the Limitation Act and Rule F. *See* Clerk's file, Doc. No. 1. On August 5, 2005, this Court signed and filed the Injunction. *See* Clerk's file, Doc. No. 20. The Injunction required that all claims arising from the Oil Spill be filed in this action by September 12, 2005, or be defaulted. *See id.* at p. 3, ¶2. The United States filed a protective claim and answer against the Limitation Petitioner on September 8, 2005, seeking to recover removal costs, damages, and civil penalties. *See* Clerk's file, Doc. No. 26.

## ARGUMENT

**I.    LIMITATION PETITIONER MAY NOT LIMIT ITS LIABILITY UNDER THE LIMITATION ACT FOR CLAIMS COGNIZABLE UNDER THE OPA.**

Limitation Petitioner may not limit liability for OPA claims to the value of its vessels under the Limitation Act. OPA is a successor statute to the cost recovery provisions of the CWA. *See* CWA § 311(f), (g), and (h); at 33 U.S.C. § 1321(f), (g) and (h). OPA states:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this chapter, each responsible party for a vessel or facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon

2

the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) that result from such incident.

OPA § 1002(a), at 33 U.S.C. § 2702(a) (emphasis added). *See also In re* Metlife Capital Corp., 132 F.3d 818, 821 (1st Cir. 1997) ("a plain reading of the subsection suggests that OPA repealed the Limitation Act with respect to removal cost and damages claims against responsible parties. . . . Accordingly, the procedural rules incorporated into the Limitation Act are inapplicable as well to such claims.") (citations omitted).

> In addition to the "notwithstanding" clause, at least four other provisions in the statute explicitly repeal the Limitation Act with respect to certain types of claims. *See* 33 U.S.C. §§ 2702(d)(1)(A) (repealing the Limitation Act as to third parties solely responsible for a spill; 2718(a) (repealing the Limitation Act as to state and local statutory remedies); 2718(c)(1) repealing the Limitation Act as to additional liability imposed by the United States, any state, or political subdivision); 2718(c)(2) (repealing the Limitation Act as to fines or penalties). . . .

> When we consider these five OPA provisions which explicitly repeal the Limitation Act as well as others that are irreconcilably in conflict . . . we find that the OPA has repealed the Limitation Act as to oil spill pollution claims arising under the OPA in the instant case. "'[W]here provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one. . . .'"

*Id.* at 821-22 (citations omitted).

A.    **Legislative History States That OPA Clearly Preempts Limitation Act.**

The legislative history to OPA § 1002(a) states:

Section 1002(a) of the Conference substitute establishes liability and creates a cause of action for removal costs and damages that are specified in subsection (b) and that result from an incident. The responsible party or a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, is liable for these costs and damages. Liability under this Act is established notwithstanding any other provision or rule of law. This means that the liability provisions of this Act would govern compensation for removal costs and damages notwithstanding any limitations under existing statutes such as the act of March 3, 1851 (46 U.S.C. 183).

H. R. CONF. REP. No. 101-653, at 103 (1990), *reprinted in* 1990 U.S.C.C.A.N. 779, 781 (emphasis

added). *See also* S. REP. No. 101-94, at 6 and 14 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722, 727

("the [Limitation Act] is explicitly made inoperative by this bill for claims arising under this

legislation. . . ."), and at 736 ("If applied to [oil discharges], the 1851 statute virtually eliminates any

meaningful liability on the part of the owner or operator and would unravel the balance of liability

set forth herein.  Therefore this bill completely supersedes the 1851 statute with respect to oil

pollution."). *See also In re* Metlife Capital Corp., 132 F.3d at 822.  The Senate report accompanying

OPA noted:

> The disaster caused by the nation's largest oil spill in Prince William Sound was
> exacerbated greatly by an unreasonably slow, confused and inadequate response by
> industry and government that failed miserably in containing the spill and preventing
> damage. . . .
>
>                                       * * * *
>
> Moreover, four major spills within a three-month period suggest that spills are still
> too much of an accepted cost of doing business for the oil shipping industry.  At the
> present time, the costs of spilling and paying for its clean-up and damage is not high
> enough to encourage greater industry efforts to prevent spills and develop effective
> techniques to contain them.  Sound public policy requires reversal of these relative
> costs.

S. REP. No. 101-94, at 6 (1990), *reprinted in* 1990 U.S.C.C.A.N. at 723-24.  The statute's literal

language and legislative history make it abundantly clear that the Limitation Act does not limit a

shipowner's liability for OPA removal costs and damages.

**B.     Case Law Holds That Federal Environmental Claims Are Not Subject To The
        Limitation Act.**

Before OPA's enactment, the CWA governed liability limitations for federal removal costs

associated with oil spills.  Well settled CWA case law provides that the Limitation Act does not

serve to limit a shipowners's liability for certain costs and damages from oil spills in navigable

4

waters of the United States. *See In re* Metlife Capital Corp., 132 F.3d at 821; Bouchard Transp. Co.

v. Updegraff, 147 F.3d 1344, 1347 (11th Cir. 1998) ("[OPA] explicitly supersedes the Limitation

Act's liability limits with respect to claims for cleanup costs and damages from a discharge of oil,

. . ."); *In re* Hokkaido Fisheries Co., 506 F. Supp 631, 634 (D. Alaska 1981) ("notwithstanding"

clause in CWA means that no other laws limit a polluter's liability for the discharge of oil); *In re*

Oswego Barge Corp., 664 F.2d 327, 340 (2d Cir. 1981) (the phrase "notwithstanding any other

provision of law . . . . means that the remedies established by the [CWA] are not to be modified by

any preexisting law."); *In re* Lloyd's Leasing, Ltd., 764 F. Supp. 1114, 1137 (S.D. Tex. 1990)

(claims to recover oil pollution costs by United States under CWA are not subject to Limitation Act).

*See also* Tug Allie-B, Inc. v. United States, 273 F.3d 936, 944-45 (11th Cir. 2001) (same result under

Park System Resources Protection Act, 16 U.S.C. §§ 19jj, *et seq.*, strict liability regime).

> . . . OPA broadly supersedes the [Limitation Act] with respect to damages and
> removal costs under both federal and state law, including common law. Thus the
> [Limitation Act] should no longer apply to limit any action for damages or removal
> costs in connection with any pollution incident.

2 Thomas J. Schoenbaum, *Admiralty and Maritime Law*, at 411 (3d ed. 2001).

The courts have also consistently held that remedial and enforcement provisions in other

federal environmental statutes are not subject to the Limitation Act's limits of liability. *See* United

States v. CF Industries, Inc., 542 F. Supp. 952, 956-57 (D. Minn. 1982) (claim for statutory civil

penalty under the CWA for discharge of hazardous material not subject to limitation); *In re* Glacier

Bay, 944 F.2d 577, 582-83 (9th Cir. 1991) (holding that even without express language referring to

the Limitation Act, the comprehensive liability scheme of the Trans-Alaska Pipeline Authorization

Act, 43 U.S.C. §§ 1651, *et seq.*, implicitly repealed the Limitation Act); University of Tex. Med.

Branch at Galveston v. United States, 557 F.2d 438, 448 (5th Cir. 1977) (civil actions to recover

wreck removal costs under the RHA not subject to Limitation Act).  *See also* Tug Allie-B, Inc. v. United States, 273 F.3d 936 (strict liability action to recover damage to park coral).  These cases support the proposition that OPA's comprehensive remedial scheme is not subject to limitation under the Limitation Act.

C.    **OPA's "Notwithstanding" Clause Explicitly Preempts Limitation Act and Rule F.**

OPA's "notwithstanding" clause is even more specific in scope than the CWA's.  Whereas the CWA clause reads "notwithstanding any other provisions of law," at 33 U.S.C. § 1321(f), the OPA clause reads "notwithstanding any other provision or rule of law," at 33 U.S.C. § 2702(a).  Thus, where another statute or rule, such as the Limitation Act and Rule F, are inconsistent with OPA, OPA's liability and compensation scheme governs.

> [OPA] is not subject to Rule F for two reasons:  (1) [OPA] claimants do not face a limited fund necessitating a pro rata distribution; and (2) Congress has specifically set forth procedures to implement the strictures of [OPA].

Bouchard Transp. Co. v. Updegraff, 147 F.3d at 1350.  The Limitation Act's limits of liability are inconsistent with OPA because they are significantly lower than provided for in 33 U.S.C. § 2704.  Rule F's application to OPA claims is inconsistent with OPA because it would alter the limitations periods for filing claims under OPA and would deny recovery for subrogated claims filed beyond the concursus deadline date.

In light of the OPA's literal language, its legislative history, and existing case law, liability under the OPA is not subject to the Limitation Act's provisions limiting recovery to the limitation fund created by the Limitation Petitioner.

II.    **OPA CLAIMS ARE NOT SUBJECT TO CONCURSUS UNDER EITHER THE LIMITATION ACT OR RULE F.**

The Injunction directed all parties to file their OPA claims, among others, with the Court by September 12, 2005, or face default. However, the Injunction, prepared for the Court's signature by the Limitation Petitioner, cannot serve to create a concursus for OPA claims. Moreover, neither the Injunction, the Limitation Act, nor Rule F can bar the United States' rights of recovery for OPA claims paid, and yet payable, by the Oil Spill Liability Trust Fund ("Fund") for which the Limitation Plaintiff is liable under OPA. As evidenced by the literal language and legislative history of the OPA, the Limitation Act and Rule F simply do not apply, as is true of preceding legislation regarding oil spills. Even if the language and legislative history of the OPA were not so clear, the Limitation Act and Rule F should not apply for the following reasons.

A.    <u>**OPA Preempts Limitation Act Concursus Because These Statutory Provisions Are Inherently Inconsistent In Their Purpose And Application.**</u>

Although concursus promotes judicial economy and efficiency, the premature joining and resolution of OPA claims undermines the OPA's remedial provisions, and shifts the cost of an oil discharge in navigable waters to innocent parties. By its nature, concursus cuts off claims not filed by the court imposed deadline. Applying the Limitation Act concursus effectively nullifies or modifies a significant number of OPA provisions, including, but not limited to: 33 U.S.C. § 2702 (elements of liability); 33 U.S.C. § 2712 (rights of subrogation); 33 U.S.C. § 2713(c) (claims procedure, election); 33 U.S.C. § 2715 (subrogation); 33 U.S.C. § 2717(b) (jurisdiction/venue); and 33 U.S.C. § 27117(f) (period of limitations).

OPA provides an elaborate scheme for resolving claims. Assuming it applies to claims cognizable under OPA, concursus completely disrupts that elaborate claims procedure. *See* 33

7

U.S.C. § 2713. *See also In re* Metlife Capital Corp., 132 F.3d at 824; and Bouchard Transp. Co. v. Updegraff, 147 F.3d at 1350-51. This is because it changes a claimant's entitlement to recover against a responsible party as set forth in the OPA. Congress specifically intended that claims mechanism to supersede the Limitation Act. *See* S. REP. NO. 101-94, at 6 (1990), *reprinted in* 1990 U.S.C.C.A.N. at 728. In summary, because these statutes are inherently inconsistent in their purpose, application, and statutory language, the OPA's explicit "notwithstanding" clause preempts application of the Limitation Act, and its concursus procedure, to claims cognizable under the OPA.

**B.     Application Of Concursus To OPA Claims Would Debilitate United States' Subrogation Rights.**

The United States also retains subrogation rights for claims paid by the Fund for removal costs and damages. *See* 33 U.S.C. §§ 2715 and 2712(f). Before presenting a claim to the Fund, a claimant must first present its claim to the responsible party. *See* 33 U.S.C. § 2713(a). If the responsible party denies the claim or does not settle it within 90 days, the claimant may then maintain a cause of action against the responsible party or present the claim to the Fund for payment. *See* 33 U.S.C. § 2713(c).

If the Court concludes that claims respecting OPA liability are subject to concursus, the financial burden of the discharge of oil into the Chicago Sanitary and Ship Canal will fall squarely upon the Federal Government instead of upon the responsible parties. For example, assume the Injunction stands and the deadline for filing OPA claims remains September 12, 2005. Thereafter, a claimant presents a damage claim to the Limitation Petitioner, as a responsible party, who denies it as time barred. The claimant then presents the claim to the Fund. If the Fund pays on a properly presented claim, the United States acquires the right of subrogation to that claim to the extent that the claimant would otherwise retain rights against the responsible party. *See* 33 U.S.C. §§ 2712(f),

2713, and 2715(a). If the Injunction bars the claimant from recovering against the responsible party, the United States, as a subrogee, may also be prejudiced in recovering against the responsible party. Consequently, if the Injunction allows the Limitation Petitioner to default the OPA claimants who did not file by September 12, 2005, the Fund may be forced to absorb the cost of all claims presented to the Fund thereafter.

That absorption will continue until the limitations periods for presenting claims against the Fund expires. The OPA provides that a claimant has six years from the time of removal actions are completed to present a claim to the Fund for removal costs. *See* 33 U.S.C. § 2712(h)(1). A claimant has three years from the date injury should reasonably have been discovered, or, when a natural resource damage assessment is performed, three years from the completion date of the assessment, whichever is later, to present a claim to the Fund for damages. *See* 33 U.S.C. § 2712(h). The only prerequisite to filing a claim against the Fund is that the claimant first present the claim to the responsible party.

Except as provided in 33 U.S.C. § 2717(f)(3) and (4), the OPA imposes a three-year statute of limitation for filing actions against a responsible party to recover costs and damages as set forth in the OPA. *See* 33 U.S.C. § 2717(f)(1) and (2). The OPA extends the limitations period for contribution actions by three years from the judgment date. *See* 33 U.S.C. § 2717(f)(3). The OPA also extends the limitations period for subrogation actions by three years from the date the Fund pays a subrogated claim. *See* 33 U.S.C. § 2717(f)(4). By implication, the United States' subrogated rights against a responsible party may exist for nine or more years under the OPA.

When it enacted the OPA, Congress did not envision that a concursus would forever bar all OPA claims against the responsible parties not filed in a limitation action within a few months of

9

the discharge. Any interpretation of the Injunction and Rule F so that OPA claims are subject to concursus eviscerates the United States' subrogation rights and also the rights of third-party claimants to determine if they have been injured.

**C.    Rule F Applies To Traditional Limitation Act Proceedings.**

Although Rule F provides that a shipowner may file a complaint "for limitation pursuant to statute," Rule F's language illustrates that it applies to the traditional Limitation Act case. For example, Rule F(1) provides that the shipowner shall deposit with the court "a sum equal to the amount or value of the owner's interest in the vessel and pending freight." That amount of security reflects the extent of the shipowner's liability under the Limitation Act. *See* 46 U.S.C. § 183(a). If Rule F applies to the OPA, the security deposit presumably should equal the OPA's liability limits, *e.g.*, $1,200.00 per gross ton or $10,000,000.00 per responsible party, whichever is less. Yet Rule F does not require the shipowner to identify nor deposit with the court any other assets to cover potential liability under the OPA. The interpleader-type fund created by Rule F is wholly inadequate to address a responsible party's liability under the OPA. Thus, one of the Rule's primary benefits in creating a fund from which to compensate proper claimants to the extent permitted by law does not exist as to claims cognizable under the OPA.

In addition, Rule F(7) only allows claimants to petition the court to raise the security amount deposited with the court when the amount deposited is "less than the value of the plaintiff's interest in the vessel and pending freight." This provision reflects the Rule's application to a traditional limitation action, not a case involving environmental statutes complete with their own specific limitation scheme.

**D.**     **Rules Of Statutory Construction Prescribe That The OPA Amends Rule F.**

Even if Rule F applied to claims subject to limitation under statutes other than the Limitation

Act, rules of statutory construction prescribe that OPA amends Rule F to the extent the two statutes

are inconsistent. In Hines, Inc. v. United States, the court held that the Limitation Act did not limit

a shipowner's strict liability under the RHA, 33 U.S.C. §§ 408 and 411, for damage to river's

improvements built by the United States. *See* Hines, Inc. v. United States, 551 F.2d 717, 729-30 (6th

Cir. 1977); and Bouchard Transp. Co. v. Updegraff, 147 F.3d at 1251; Tug Allie-B, Inc. v. United

States, 273 F.3d at 941-42 (addressing another strict liability statute).     Specifically, the Hines court

stated:

> As a general rule when the purposes of two statutes appear to be in conflict with each
> other, and there is no statutory language which makes and cross-reference, and, as
> here, the legislative history is silent as to the possible conflict, it is generally assumed
> that the later statute constitutes an amendment of the earlier one.

*Id.* at 725.

As discussed above, the OPA's "notwithstanding" clause preempts "any other provision or

rule of law." 33 U.S.C. § 2702(a).     As well, the "notwithstanding" clause stipulates that each

responsible party is liable for removal costs and damages "subject to the provisions of this chapter."

*Id.* Under the OPA, the United States is entitled to commence an action against a responsible party,

at a time of its own choosing, within the limitation periods set forth therein. *See* 33 U.S.C. § 2718.

The OPA specifically provides that "an action may be commenced under this subchapter for recovery

of removal costs at any time after such costs have been incurred." 33 U.S.C. § 2717(f)(2) (emphasis

added).     Conversely, an injunction under the Limitation Act or Rule F, if applicable, would foreclose

a contemporaneous action against a shipowner under the OPA. *See* 46 U.S.C. § 185. Consequently,

as discussed above, the OPA and the Limitation Act conflict, as do the OPA and Rule F(3).     For

11

claims cognizable under the OPA, the "notwithstanding" clause preempts the injunction that otherwise would arise under the Limitation Act and Rule F. The OPA, as a subsequent act of Congress, overtakes the Limitation Act because the two are inherently inconsistent. *See Hines, Inc. v. United States*, 551 F.3d at 729-730.

The OPA's legislative history is hardly silent on the conflict between the two statutes as it clearly states that the Limitation Act is "explicitly made inoperative by this bill for claims arising under this legislation." S. REP. NO. 101-94, *reprinted in* 1990 U.S.C.C.A.N. at 736.

### E.    Limitation Act Injunctions Are Meaningless Against Claims Not Subject To Limitation Under The Limitation Act.

The limitation plaintiffs in United States v. CF Industries, Inc. complained that the United States improperly filed suit in a separate proceeding to the limitation action, and that the injunction issued by the limitation court applied to all proceedings. *See* United States v. CF Industries, Inc., 542 F. Supp. at 954. The court held, however, that because the civil penalty assessment under 33 U.S.C. § 1319(d) was not subject to limitation under the Limitation Act, the limitation court had no jurisdiction over the United States' civil penalty claim. *Id.* at 956-57. Without jurisdiction, the injunction was meaningless. Similarly here, the Injunction does not preclude the United States from filing a separate action to recover claims cognizable under the OPA.

The United States did not participate voluntarily in this limitation proceeding as to claims cognizable under the OPA, nor as to existing claims under other federal environmental statutes. The United States filed a protective claim because the Court issued the Injunction admonishing all parties to file their respective claims or face default. Even though the limitation proceeding cannot adjudicate claims cognizable under the OPA, the United States filed the protective claim in deference to the Court's authority to issue judicial orders.

12

For the reasons set forth above, and as historically determined by courts construing the CWA, this Court lacks jurisdiction to both enjoin actions cognizable under the OPA, and to compel the concursus of all OPA related claims in this limitation proceeding.

## III.    THE LIMITATION PETITIONER MAY NOT LIMIT LIABILITY UNDER THE LIMITATION ACT FOR CLAIMS COGNIZABLE UNDER THE CWA.

The OPA, under 33 U.S.C. § 2718(c), expressly prohibits the application of the Limitation Act to CWA civil penalties:

> **(c)    Additional requirements and liabilities; penalties**
>
> Nothing in this Act, the Act of March 3, 1851 (46 U.S.C. 183 et seq.), or section 9509 of title 26, shall in any way affect, or be construed to affect, the authority of the United States or any State or political subdivision thereof –
>
> * * *
>
> (2)    to impose, or to determine the amount of, any fine or penalty (whether criminal or civil in nature) for any violation of law:

33 U.S.C. § 2718 (c)(2) (emphasis in original).

In addition to the foregoing statutory bar to the Limitation Act's application to civil penalties, case law has also disallowed limitation under the Limitation Act. It is well settled that a shipowner may not limit his liability under the Limitation Act for civil penalty claims asserted pursuant to 33 U.S.C. § 1319(d). *See* United States v. CF Industries, Inc., 542 F. Supp. at 956. That case concerned an unpermitted discharge of anhydrous ammonia from a barge into the Mississippi River. The putative violators there sued under the Limitation Act seeking to limit liability to the value of the vessels involved. *Id.* at 953-54. Subsequently, the United States sought judicial assessment of a civil penalty in a separate action. *Id.* at 954. The court stated that although the Limitation Act's language is broad:

13

It does not specifically cover suits for statutory penalties. On the other hand, the language of section 309 of the CWA is clear and direct with respect to a shipowner's liability for a statutory penalty. . . . This section imposes strict liability for persons who pollute the nation's waters.

*Id.* at 955. The court also noted that "if the government's claim for a civil penalty must be brought in the limitation action, it will have no deterrent effect. *Id.* at 956. The Limitation Act did not apply to CWA enforcement provisions. *Id.*

In addition, the same statutory construction argument, in section II *supra*, applies with equal vigor here. *See* Hines, Inc. v. United States, 551 F.2d at 729-30. No legislative history exists which explains the conflicts between the Limitation Act and the CWA. The passage of more than a century between enactment of the Limitation Act and the CWA, coupled with the dearth of legislative history explaining the inherent conflicts between these two statutes, lead to the conclusion that where these laws are inconsistent, the CWA amends the Limitation Act.

These laws are inconsistent in establishing the extent of a shipowner's liability for polluting the United States' navigable waters. The CWA judicial civil penalty provisions, 33 U.S.C. §§ 1319(d) and 1321(b)(7), create strict liability that mandates penalties for unpermitted discharges of pollutants, oil and hazardous substances into the United States' navigable waters. The Limitation Act, on the other hand, relies upon the shipowner's privity or knowledge of negligence to establish liability. Neither fault nor intent is relevant to strict liability under 33 U.S.C. §§ 1319(d) and 1321(b)(7), "except in connection with the amount of penalty imposed." United States v. Amoco Oil Co., 580 F. Supp. 1042, 1050 (W.D. Mo. 1984). The court in United States v. Ohio Valley Co., held that:

[s]ince the triggering mechanism for 183(a) limitation of liability is tied to an awareness of negligence, and because negligence is not significant in actions under sections 14 and 16 [of the RHA], it follows that the limitation of liability provisions

14

are inapplicable to those sections.

United States v. Ohio Valley Co., 510 F.3d 1184, 1188 (7th Cir. 1975) (words added).

Similarly here, negligence is irrelevant to the strict liability provisions of the CWA at 33

U.S.C. §§ 1319(d) and 1321(b)(7). As in the Ohio Valley case, *supra*, it follows that the Limitation

Act is inapplicable to 33 U.S.C. §§ 1319(d) and 1321(b)(7).

## IV.     THE LIMITATION PETITIONER MAY NOT LIMIT ITS LIABILITY UNDER THE LIMITATION ACT FOR CLAIMS COGNIZABLE UNDER THE RHA.

The Limitation Act also does not apply to violations of the RHA.  Case law has consistently

held the Limitation Act inapplicable to the RHA.  *See* Hines, Inc. v. United States, 551 F.2d at 729-

30; The Snug Harbor, 53 F.2d at 411; University of Tex. Med. Branch at Galveston, 557 F.2d at 447.

Also, as discussed above for the OPA and the CWA, statutory construction leads to the conclusion

that the RHA, enacted 48 years later with no cross-reference in its legislative history, amends the

Limitation Act.

## CONCLUSION

This honorable Court should lift or modify its Injunction with regard to the claims of the

United States cognizable under the OPA, the CWA, and the RHA, so as to allow the United States

to file its claims outside of the limitation proceeding, as those claims are not subject to limitation

under the Limitation Act, nor concursus under the Limitation Act or Rule F, and dismiss without

prejudice the United States claims in this action.

Dated:  December 8, 2005.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

STEPHEN R. CAMPBELL
Trial Attorney
D.C. Bar No. 348540
Torts Branch, Civil Division
U. S. Department of Justice
P. O. Box 14271
Ben Franklin Station
Washington, DC  20044-4271
Tel:    (202) 616-4026
Fax:    (202) 616-4002
stephen.campbell@usdoj.gov
Attorneys for Claimant
UNITED STATES OF AMERICA

C

# UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| ) | Civil Action No. **05-cv-04074** |
| In the Matter of the Complaint of, ) | |
| EGAN MARINE CORPORATION, ) | Judge Filip |
| Owner of the Motor Vessel "LISA E" and ) | |
| the Barge EMC 423, for Exoneration from ) | Magistrate Judge Denlow |
| or Limitation of Liability ) | |
| ) | In Admiralty |

## ORDER

Upon consideration of the "United States' Motion to Lift or Modify the Order for Notice and Injunction, filed August 5, 2005," and papers in support thereof and in opposition thereto,

IT IS HEREBY ORDERED that said motion is GRANTED;

IT IS FURTHER ORDERED that the Injunction issued in this limitation proceeding shall not apply to claims of the United States against the Limitation Petitioner cognizable under the Oil Pollution Act of 1990, 33 U.S.C. §§ 2701, *et seq.*, the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, and the Rivers and Harbors Act, 33 U.S.C. §§ 401, *et seq.*; and

IT IS FURTHER ORDERED that the claimant United States of America is dismissed, without prejudice.

_____
UNITED STATES DISTRICT JUDGE

12,19-05