IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | **No.: 08 CV 3160** |
| **GREAT AMERICAN INSURANCE** | ) | |
| **COMPANY OF NEW YORK** | ) | |
| **Applicant for Intervention.** | ) | **Judge Coar** |
| | ) | **Magistrate Judge Cox** |
| **v.** | ) | |
| | ) | |
| **EGAN MARINE, CORP.** *in personam,* | ) | |
| **MOTOR VESSEL LISA E,** *in rem*, and | ) | |
| **TANK BARGE EMC-423,** *in rem*, | ) | |
| **Defendants** | ) | |

## GREAT AMERICAN INSURANCE COMPANY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

Great American Insurance Company of New York ("GAIC") submits this Memorandum of Law in support of its Motion to Intervene in this action by the United States of America ("USA") against Egan Marine, Corp., *in personam,* Motor Vessel Lisa E, *in rem*, and Tank Barge EMC-423, *in rem* pursuant to Federal Rules of Civil Procedure 24(a)(2), and alternatively pursuant to Rule 24(b).

## INTRODUCTION

Great American Insurance Company of New York brings this Motion to Intervene because a disposition of the action may as practical matter impair or impede its ability to protect its interest under the Vessel Marine Pollution Policy issued to Egan Marine, Corp. in light of the insured coverage dispute between Egan and Great American raised by the allegations in the

Complaint of the United States of America.  The allegations of the Complaint raise claims or defenses related to Great American's defenses to coverage under its Marine Vessel Pollution Policy raising common questions of law or fact which will not be protected in its absence.

## FACTUAL BACKGROUND

### A.    The Policy

GAIC issued Marine Insurance Vessel Owner Pollution Policy No. OMH 538-93-12 04 to Egan Marine effective December 22, 2004 to December 22, 2005 (the "Policy").   See Exhibit 1 hereto, Declaration of Dirk Ehlers ("Ehlers Dec."), Exhibit "A", Policy.   Subject to the terms, the Policy provides coverage for the strict liability for clean up response costs imposed under §2702 of the Oil Pollution Act of 1990, 33 U.S.C. 1321, et seq. ("OPA90.")  The "Schedule of Vessels" of the Policy lists the Tugboat  LISA E ("LISA E") and the Barge EMC 423 with respective $5 million Amounts of Insurance.  See  Ehlers Dec., Ex. A., Exhibit 1, Schedule of Vessels. GAIC has already paid the full $5 million dollar limit for the subject incident relative to the Barge EMC 423.

### B.    The Spill

On January 19, 2005, the Barge EMC 423 exploded in the Chicago Sanitary and Ship Canal discharging part of the cargo of slurry oil from the Barge (the "Spill").  As a tug, the LISA E could not carry and was not carrying any of the oil cargo.

The United States Coast Guard ("Coast Guard"), designated the Barge EMC 423 as the source of the discharged oil on January 21, 2005, in accordance with § 2714(a) of OPA90:

> On 19 January 2005, your vessel **the T/B EMC423 discharged oil** into the Chicago Sanitary and Ship Canal, a navigable water of the United States.  **The Oil Pollution Act of 1990, 33 USC 2701 et seq., requires that we formally designate the T/B EMC423 as the source of the discharge** and notify you that as its owner/operator, you incur certain legal responsibilities to the U.S.

> Government and others damaged by this incident.  You are liable for removal costs and damages as specified in **33 USC 2702** and must advertise the procedures by which persons who have claims for removal costs and damages may submit their claims to you, as specified in 33 USC 2714.
>
>    \*   \*   \*
>
> You may deny this designation within 5 days of receipt of this Notice of Designation.

<u>See</u> Ehlers Dec., Exhibit B.   The Coast Guard's designation notified Egan that, as owner of the "T/B EMC423," it was a responsible party strictly liable under 33 U.S.C. § 2702 of OPA90 for removal costs and damages as a result of the Spill.  Specifically, under OPA90, when there is an oil spill, the President "designates" the Vessel that is the source of the spill and notifies the owner-operator of that Vessel of the designation.  Section 2714(a) of OPA90 provides:

> (a)  Designation of Source and notification
>
> When the President receives information of an incident, the President shall, where possible and appropriate, designate the source or sources of the discharge or threat.  If a designated sources is a vessel or facility, the President shall immediately notify the responsible party and the guarantor, if known, of that designation.

33 U.S.C. § 2714(a).  The President has delegated this duty to the U.S. Coast Guard.  33 CFR § 136.305.  Pursuant to the Coast Guard's Regulations:

> (a) When information of an incident is received, the source or sources of the discharge or threat are designated, where possible and appropriate.  **If the designated source is a vessel** or facility, the responsible party and the guarantor, if known, are notified by telephone, telefax, or other rapid means of that designation.  The designation will be confirmed by a written **Notice of Designation**.
>
> (b) A Notice of Designation normally contains, to the extent known --
>
>   (1) **The name of the vessel** or facility designated as the source . . . . *Id.* (emphasis added).

The owner-operator of the designated vessel is then held strictly liable – without a finding

of fault – for clean up costs:

> [E]ach responsible party for **a vessel** or a facility **from which oil is
> discharged**, or which poses the substantial threat of a discharge of
> oil, into or upon the navigable waters or adjoining shorelines or the
> exclusive economic zone **is liable for the removal costs and
> damages** specified in subsection (b) that result from such incident.

*See* § 2702(a) (emphasis added).

Only the Barge, not the Tug LISA E, was designated as the source by the Coast Guard.

The Coast Guard neither designated the Tug LISA E as a discharging vessel nor designated Egan

as a responsible party strictly liable under 33 U.S.C. § 2702(a) for removal costs and damages

under OPA90 with respect to the Tug.

On May 18, 2005, the Coast Guard sent a letter to Egan with the subject

"TERMINATION OF EMERGENCY RESPONSE," stating:

> Consequently, I have determined that this release has been
> contained and the cargo currently **on board the EMC423 no
> longer represents a substantial threat of a discharge of oil or a
> hazardous substance**. Therefore, pursuant to my authority as
> Federal On Scene Coordinator (FOSC) under the National
> Contingency Plan (NCP), including 40 CFR 300.320(b) and other
> applicable authority, that portion of this emergency response
> relating to the barge EMC 423 and the cargo contained therein, and
> related to the cargo contained in the tank barge EMC 506 is
> complete effective at the time the EMC 423 was successfully
> moored at the above mentioned facility.

See Ehlers Dec., Exhibit C (emphasis added).

GAIC paid the full $5 million Amount of insurance for the Barge EMC 423 under the

Policy based on the designation of the Barge as the discharging vessel. The full $5 million

Policy limit in coverage for Egan in its capacity as owner-operator of the Barge EMC 423 under

the Policy has been exhausted. In Egan Marine Corporation and Service Welding &

Shipbuilding , LLC v. Great American Insurance Company of New York, United States District

Court for the Northern District of Illinois, No.: 05 C 5295, the Court concluded the Policy limit

for the Barge EMC 423 with respect to the incident, had been exhausted.

C.    **The USA Complaint**

On or about June 2, 2008, the USA filed the subject Complaint against Egan Marine, the

Motor Vessel LISA E and the Tank Barge EMC-423.  On or about July 24, 2008, the USA filed

an Amended Complaint.

In the USA Complaint, the USA claims for reimbursement of removal costs, damages

and compensation to claimants the Oil Spill Liability Trust Fund (the "Fund") allegedly paid in

connection with the Spill, in the amount of $1,562,101.78.  (USA Complaint, ¶ 4.)  The USA

Complaint makes allegations against both the Barge EMC-423 and the Tug LISA E under

OPA90.

The USA Complaint makes allegations that the Policy does not respond for.  Further, the

USA Complaint makes improper allegations that at the time of the Spill the Barge EMC-423 and

Tug LISA E constituted a single vessel and/or flotilla (¶ 51).

The USA Complaint's allegations of § 2702 liability against the Tug and the Barge are

contrary to the Coast Guard's earlier designation making only the owner-operators of the Barge

EMC 423, as the discharging vessel, strictly liable for the clean up.

The USA Complaint makes allegations that the Policy does not respond for, and presents

novel facts and legal issues that materially affect the GAIC Policy.

Egan does not have incentive to conform these issues for GAIC's benefit.

**LEGAL ARGUMENT**

**POINT I**

**THE COURT SHOULD GRANT GAIC'S  MOTION TO INTERVENE
AS A MATTER OF RIGHT**

GAIC should be permitted to intervene in this action as a matter of right pursuant to

Federal Rule of Civil Procedure 24(a)(2), which reads, in relevant part:

> On timely motion, the court must permit anyone to intervene who:
>
> * * *
>
> Claims an interest relating to the property or transaction that is the
> subject of the action, and is so situated that disposing of the action
> may as a practical matter impair or impede the movant's ability to
> protect its interest, unless existing parties adequately represent that
> interest.

Fed. R. Civ. P. 24(a).  Rule 24(a) is liberally construed in favor of permitting intervention.

Intervention is the proper mechanism for nonparties to protect interests that may be adversely

affected by a trial court's judgment.   Felzen v. Andreas, 134 F.3d 873, 874 (7th Cir.1998); Sec.

Ins. Co. of Hartford v. Schipporeit, Inc., 69 F.3d 1377, 1380 (7th Cir. 1995) (finding that

underlying claimant had right to intervene in declaratory judgment action by insurer against

defendant insured);  Hartford Accident & Indem. Co. v. Crider, 58 F.R.D. 15 (N.D. Ill. 1973)

(same).

To prevail in the Seventh Circuit, a potential intervenor must show: (1) the application is

timely; (2) the applicant has an "interest" in the property or transaction which is the subject of

the action; (3) disposition of the action as a practical matter may impede or impair the applicant's

ability to protect that interest; and (4) no existing party adequately represents the applicant's

interest.  Shipporeit, 69 F.3d at 1380; Reich v. ABC/York-Estes Corp., 64 F.3d 316, 321 (7th

Cir.1995).

DM1\1363163.3

When considering a motion to intervene, a district court must accept as true the non-conclusory allegations of the motion and complaint-in-intervention.  Reich, 4 F.3d at 321.  GAIC's motion to intervene satisfies each of these three requirements.

**1.     GAIC's Motion to Intervene is Timely.**

The test for timeliness is one of reasonableness: "potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly."  Nissei Sangyo America, Ltd. v. U.S., 31 F.3d 435, 438-39 (7th Cir. 1994) (finding that 3 month delay was timely).  "Though the passage of time itself is not the only factor, rather the 'most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case.'"  Id. at 439 (citing 7C Charles Alan Wright, et al., Federal Practice and Procedure: Civil 2d § 1916 (1986)).

GAIC filed this motion promptly after determining that its interests are at issue.  The Complaint was filed by the USA less than three months ago, and the Amended Complaint approximately a month ago.  Egan recently entered an appearance.  A scheduling order has not been entered yet, and as such the parties have not engaged in any discovery.

Accordingly, GAIC's intervention is at the beginning of the lawsuit and will not disrupt any proceedings.  Therefore, the Court should permit GAIC to intervene in the action.

**2.     GAIC Has An Interest in the Subject Matter of the Action.**

The Supreme Court has embraced a broad definition of the "interest" required to grant a motion to intervene.  Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129 (1967) (describing it as one which is "significantly protectable"); Donaldson v. U.S., 400 U.S. 517, 531 (1971).  Courts in the Seventh Circuit require that the potential intervenor's interest be

a "direct, significant legally protectable" one.  Am. Nat'l Bank v. City of Chicago, 865 F.2d 144, 146 (7th Cir. 1989).  The interest should be something more than a  "betting" interest, but less than a property right.  Schipporeit, Inc., 69 F.3d at 1380-81.

In ascertaining a potential intervenor's interest in a case, courts should focus on the issues to be resolved by the litigation and whether the potential intervenor has an interest in those issues.  See Reich, 64 F.3d at 322 (citing American Nat'l Bank v. City of Chicago, 865 F.2d 144, 146 (7th Cir.1989).

GAIC has a direct material interest in the outcome of the instant action.  Indeed, the USA Complaint contains allegations for which the Policy does not respond.  Further, the USA makes allegations that are contrary to the Coast Guard's earlier sole designation of the Barge EMC 423 as the discharging vessel, which rendered Egan as owner of the Barge strictly liable for the clean up under OPA90 § 2702 and triggered the separate Policy limit for the Barge EMC-423 which GAIC has fully paid.   The allegations by the USA that the Tug and the Barge constitute "one vessel" is an improper implication of the "flotilla doctrine" contrary to the liability scheme established in OPA 90 upon which the action is supposedly brought and a patent attempt to trigger the separate limit for the Tug LISA E.   Therefore, the outcome of this action directly affects GAIC's rights and interests.  Moreover, the allegations made by the USA present novel facts and legal issues that materially affect the GAIC Policy.

GAIC has an interest in protecting its Policy.  As a result, GAIC should be allowed to intervene pursuant to Fed. R. Civ. Pro. 24(a)(2).

**3.**     **GAIC's Ability to Protect Its Interest May Be Impaired If It Is Not Allowed to Intervene.**

The third requirement an intervenor must establish to prevail on a motion to intervene is that the disposition of the action as a practical matter may impede or impair the applicant's ability to protect that interest.  Shipporeit, 69 F.3d at 1380.  Impairment occurs when the decision of a legal question, as a practical matter, would foreclose the rights of a proposed intervenor in a subsequent proceeding. Shea v. Angulo, 19 F.3d 343, 347 (7th Cir. 1994).

The disposition of this action will impair GAIC's ability to protect its Policy.    The allegations by the USA that the Tug and the Barge constitute "one vessel" is a patent attempt to trigger the separate limit for the Tug LISA E.  The allegations present novel legal issues that materially affect the GAIC Policy.   Absent intervention, GAIC will have no ability to protect the Policy.  Accordingly, GAIC should be allowed to intervene pursuant to Fed. R. Civ. Pro. 24(a)(2).

**4.**     **GAIC's Interests are not Adequately Represented.**

A party seeking intervention as of right must only make a showing that its interests are not adequately represented.   Shipporeit, 69 F.3d at 1380.  GAIC should be allowed to intervene in the instant action because its interests are not represented by the existing parties.  GAIC's interest is as insurer of Egan as Tug Owner, Barge Owner, and is of such a nature that its interests are different from Egan's and the USA's and therefore are not adequately represented.

Egan and GAIC are involved in a coverage dispute concerning whether GAIC's policy provides protection greater than the $5 million already paid for the EMC 423.  As such, GAIC's interests are not protected herein.

Accordingly, GAIC should be allowed to intervene pursuant to Fed. R. Civ. Pro. 24(a)(2).

## POINT II

### IN THE ALTERNATIVE, GAIC SHOULD BE ALLOWED PERMISSIVE INTERVENTION

Alternatively, the Court should exercise its discretion to grant GAIC's motion to intervene pursuant to Federal Rule of Civil Procedure 24(b), for Permissive Intervention. Rule 24(b) provides in part:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact

Fed. R. Civ. P. 24(b)(1)(B). The rule's intended purpose is to "bring[] before the court, in orderly fashion, those who legal interests will be directly and substantially affected by the course of the litigation." Jessup v. Luther, 227 F.3d 993, 998 (7th Cir. 2000). In the Seventh Circuit, district courts have "broad discretion" to permit or deny intervention. Griffith v. Univ. Hosp. LLC, 249 F.3d 658, 662 (7th Cir. 2001).

Determining whether a claimant should be permitted to intervene pursuant to Rule 24(b)(2) is a two-stage process. The proposed intervenor must demonstrate that there is (1) a common question of law or fact, and (2) independent jurisdiction. See Schipporeit, 69 F.3d at 1381; Reedsburg Bank v. Apollo, 508 F.2d 995, 1000 (7th Cir.1975). While permissive intervention is a matter for the court's discretion, courts in the Seventh Circuit generally permit intervention where a party shows these two requirements. See Schipporeit, 69 F.3d at 1381. Further, courts have considered whether permissive intervention would cause undue delay or prejudice. Heartwood, Inc. v. U.S. Forest Service, Inc. 316 F.3d 694 (7th Cir. 2003).

1.      **An Independent Ground For Jurisdiction Exists With Respect To GAIC's Complaint In Intervention**.

GAIC's Complaint in intervention rests on a valid independent ground for jurisdiction since the Marine Insurance Vessel Owner Pollution Policy subject of GAIC's Complaint which was issued by GAIC incorporates and is interpreted consistent OPA90, which forms a part of the maritime law of the United States.

Accordingly, jurisdiction is appropriate under 28 U.S.C. § 1333 providing that this Court shall have exclusive jurisdiction over civil cases arising out of maritime or admiralty jurisdiction.

2.      **There Are Common Questions Of Law And Fact.**

The proposed intervenor must demonstrate that there is a common question of law or fact.  See Schipporeit, 69 F.3d at 1381;  Stallworth v. Monsanto Co., 558 F.2d 257, 269 (5th Cir. 1977), citing Fed. R. Civ. P. 24(b)(2).  This requirement has been construed liberally. Id.

Permissive intervention is appropriate because the Policy interests raised by GAIC involve questions of law and fact that are common to the issues to be resolved in this case.  It is without doubt that the allegations in the USA's Complaint relating to the explosion of the Barge EMC 423, the discharge of oil from the Barge, and Egan's consequent liability under OPA90 as owner of the Tug and Barge, overlap with the Policy concerns raised by GAIC with respect to coverage for Egan's alleged liability under OPA90 for clean up response costs.  Indeed, whether or not GAIC is permitted to intervene, the subject matter of this litigation will be the same.  The only difference will be whether GAIC has an opportunity to adequately protect its Policy interests.

11

**3.    Intervention by GAIC Will Not Prejudice the Parties to This Lawsuit.**

Finally, courts have also considered whether permissive intervention would cause undue delay or prejudice.  Heartwood, 316 F.3d 694.

As explained above, granting GAIC's Motion to Intervene will not prejudice the parties to this litigation.  The case is still in the pleading stage and discovery has not yet begun. See Wilfong v. Rent-A-Center, Inc., No. 00-CV-0680-DRH, 2001 WL 578262, at *2 (S.D.Ill. May 14, 2001) (permitting the EEOC to intervene before discovery started and before a class had been certified).[1]  Moreover, the parties will not be prejudiced by GAIC's intervention because GAIC moved to intervene in a timely manner.

Accordingly, it is respectfully submitted that Court grant, in the alternative, GAIC's motion for permissive intervention.

<u>**CONCLUSION**</u>

For the foregoing reasons, GAIC respectfully requests that the Court grant its Motion to Intervene.

Dated:  August 28, 2008

---

[1] A copy of Wilfong v. Rent-A-Center, Inc., No. 00-CV-0680-DRH, 2001 WL 578262 (S.D.Ill. May 14, 2001) is attached hereto as Exhibit 2.

GREAT AMERICAN INSURANCE
COMPANY OF NEW YORK

By:  /s/ Dirk E. Ehlers
               One of their Attorneys

John T. Schriver (ARDC #2507692)
Dirk E. Ehlers (ARDC #6198475)
Duane Morris LLP
190 South LaSalle Street
Suite 3700
Chicago, Illinois  60603-3433
Telephone:  312.499.6700
Facsimile:  312.499.6701

James W. Carbin (Application for Pro Hac Vice Submitted)
Duane Morris LLP
744 Broad Street
Suite 1200
Newark, New Jersey  07102
Telephone:  973.424.2000
Facsimile:  973.424.2001

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 28, 2008 I caused a copy of the Great American

Insurance Company Of New York's Memorandum Of Law In Support Of Motion To Intervene

to be served through the electronic delivery system of the U.S. District Court for the Northern

District of Illinois, and by U.S. Regular mail, upon:

Stephen R. Campbell
U.S. Department of Justice
Civil Division, Torts Branch, Aviation & Admiralty Litigation
Ben Franklin Station
P.O. Box 14271
Washington, DC  20044-4271

AUSA
United States Attorney's Office (NDIL)
219 South Dearborn Street
Suite 500
Chicago, IL  60604
(312) 353-5300

Christopher Howard White
Ross Dixon & Bell, LLP
55 West Monroe Street
Suite 3000
Chicago, IL  60603-5758

Jennifer Curtin Timm
Egan Marine Corporation
P.O. Box 669
Lemont, IL  60439

  /s/ Dirk E. Ehlers

DM1\1363163.3

EXHIBIT "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>**Plaintiff,**<br><br>**and**<br><br>**GREAT AMERICAN INSURANCE**<br>**COMPANY OF NEW YORK**<br>**Applicant for Intervention.**<br><br>**v.**<br><br>**EGAN MARINE, CORP.** *in personam,*<br>**MOTOR VESSEL LISA E,** *in rem,* **and**<br>**TANK BARGE EMC-423,** *in rem,*<br>**Defendants** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**No.: 08 CV 3160**

**Judge Coar**
**Magistrate Judge Cox**

## DECLARATION OF DIRK E. EHLERS IN SUPPORT OF GREAT AMERICAN INSURANCE COMPANY OF NEW YORK'S MOTION TO INTERVENE

**DIRK E. EHLERS,** of full age, declares and says:

1.      I am an attorney with the law firm of Duane Morris, LLP, Suite 3700, 190 South LaSalle Street, Chicago, Illinois, and am counsel for Great American Insurance Company of New York ("GAIC") in connection with this matter.  As such, I am familiar with the matters herein.  I make this Declaration in Support of GAIC's Motion to Intervene in this action.

2.      Attached hereto as Exhibit "A" is a true and correct copy of Marine Insurance Vessel Owner Pollution Policy No. OMH 538-93-12 04 issued by GAIC to Egan Marine effective December 22, 2004 to December 22, 2005.

3.      Attached hereto as Exhibit "B" is a true and correct copy of letter dated January 21, 2005 from the United States Coast Guard to Egan Marine Corp. "Re: T/B EMC423", which

was marked as a deposition exhibit in the matter <u>Egan Marine Corporation and Service Welding</u> <u>& Shipbuilding, LLC v. Great American Insurance Company of New York,</u> United States District Court for the Northern District of Illinois, No.: 05 C 5295.

     4.    Attached hereto as Exhibit "C" is a true and correct copy of letter dated May 18, 2005 from the United States Coast Guard to Egan Marine Corporation regarding "Termination of Emergency Response, which was marked as a deposition exhibit in the matter <u>Egan Marine</u> <u>Corporation and Service Welding & Shipbuilding , LLC v. Great American Insurance Company</u> <u>of New York,</u> United States District Court for the Northern District of Illinois, No.: 05 C 5295.

     I hereby declare that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated:  August 28, 2008

                     /s/ Dirk E. Ehlers

DM1\1374930.2

Exhibit "A"

ORIGINAL COPY

C · 03·01/03/05·OMH5389312-04
0227156

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-368-5000

**GREATAMERICAN**
INSURANCE GROUP

**OCEAN MARINE DIVISION**
85 BROADWAY
NEW YORK, NEW YORK 10006
TEL: (212) 510-0135
FAX: (212) 422-1063

CAPT. EDWARD F. WILMOT
DIVISION VICE PRESIDENT

## GREAT AMERICAN EMERGENCY RESPONSE TEAM
### Providing Emergency Management Support to our Insureds in all Areas of Coverage

Great American Insurance Companies provide our Insureds with 24-hour emergency response service in the United States and internationally. The Great American Emergency Response Team (GA/ERT) utilizes experienced emergency managers' and engages response contractors to ensure prompt, effective response to any covered incident in coordination with the regulatory agencies.

In the event of an incident. regardless of its size, it is very important that we be notified immediately. One toll-free telephone call to 1-877-GAPEACT (427-3228), or 1-610-526-0454 for international callers, will place our Insured in direct contact with one of our Emergency Managers. Once the necessary information has been exchanged, assistance with required regulatory liaison is provided and Great American notifications will be made. A Response Contractor will be activated and dispatched to the scene. It should be understood that for non-US spill response, the contractor resources are less available and in many countries the Government will take a lead role in organizing and directing the response. Great American will be active in every response, regardless of the location.

Our Emergency Manager will coordinate with the local regulatory agencies, response contractor(s), affected property owners and the covered Insured to provide a prompt and effective response to minimize the costs and liabilities. In the initial stages of a response, and in most minor incidents, the Emergency Manager coordinates all response actions from our Command Center. He or she will provide liaison to the agencies, direction to the contractor, communication with the Insured and monitoring of the response. Safety, site stabilization and protection of property and the environment remain the top priorities in the response. In the event of a non-US spill, a GA/ERT local representative will be activated to coordinate with the Insured, local government agencies and the cleanup resources.

As the incident warrants, the Emergency Response Team will be activated to ensure a safe, coordinated and prioritized response management at the site. Our Emergency Response Team is a national network of experienced emergency managers who possess the expertise and value the teamwork needed to control the situation. In addition to the United States they have experience in Central and South America, Africa and the Mid-East. Our response organization is based on the Incident Command System (ICS), which provides functional operational structure and enhances our communication with other response organizations that may be involved with the response. The Great American Emergency Response Team will establish command and control of an incident and maintain the organization and coordination of the operations, planning, logistics and financial functions required in a response of any magnitude. Specialists in media affairs, environmental issues and third party claims coordination are available to support the efforts as required.

Our knowledge of response resources and regulatory requirements ensures that the most effective contractors and technical support services are deployed. This response resources network includes the clean-up contractors, waste disposal services, logistic support services, environmental specialists and remediation contractors needed to maintain the response operations, as well as to coordinate with government agencies from activation to closure.

The Great American Emergency Response Team provides the experience and organization to coordinate and manage the response to an incident of any magnitude with professionalism and effectiveness.

F4453 (Ed. 07/04) XS

C • 03•01/03/05•OMH538932l2•04

ORIGINAL COPY

0227156

**GREAT AMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI 22 64  (Ed.10/03)

Policy:  OMH  538-93-12  04
Renewal of:  OMH  538-93-12  03

## POLLUTION POLICY DECLARATIONS PAGE

| Named Insured and Address | Policy Period: |
|---|---|
| SERVICE WELDING & SHIPBUILDING, LLC 15200 CANAL BANK ROAD LEMONT, IL 60439 | 12:01 A.M. Standard Time at the address of the Named Insured shown at left From: 12/22/2004 To: 12/22/2005 |

IN RETURN FOR PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

AGENT'S NAME AND ADDRESS:
ROANOKE TRADE SERVICES, INC.

1501 E. WOODFIELD RD 302N
SCHAUMBURG, IL 60173 5401

Insurance is afforded by company indicated below:
(A capital stock corporation)

GREAT AMERICAN INSURANCE COMPANY OF NEW YORK

This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such provisions, stipulations and agreements as may be added hereto.

| | PREMIUM |
|---|---|
| POLLUTION COVERAGE | $ 83,767.00 |
| TOTAL POLICY PREMIUM: | $ 83,767.00 |

Loss, if any, payable to Insured or Order.    Loss notice must be sent to:

Great American Insurance Company
Ocean Marine Claims
P.O. Box 2468
Cincinnati, OH 45201
Telephone # (800) 426-9697
In the event of an incident, please contact our Emergency Response Team at:
Toll Free: 877-GAREACT (877-427-3228)
Direct Dial: 610-725-8286

GAI 22 64    10/03              (Page  1 of  5 )

C  * 03*01/03/05*OMH5389312-04                          ORIGINAL COPY

0227156

**GREAT AMERICAN**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI 22 64  (Ed.10/03)

Policy:  OMH  538-93-12  04
Renewal of:  OMH  538-93-12  03

## POLLUTION POLICY DECLARATIONS PAGE

Premium shown is payable:$                    at inception:

$

**FORMS AND ENDORSEMENTS** applicable to all Coverage Forms and made part of this
policy at time of issue are listed on the attached Forms and Endorsements
Schedule GAI 2297 (01/01).

Countersigned at: _____        Date Countersigned: _____

By _____
Authorized Representative

### SCHEDULE OF VESSELS

| VESSEL | DESCRIPTION/NAME | GRT | AMOUNT OF INSURANCE | PREMIUM |
|---|---|---|---|---|
| 1 | 1956 Steel Tugboat<br>Name:LISA E | 75 | $ 5,000,000 | $ 2,592.00 |
| 2 | 1965 Steel Tank Barge<br>Name:EMC 307 | 822 | $ 5,000,000 | $ 3,476.00 |
| 3 | 1962 Steel Tank Barge<br>Name:EMC 321 | 818 | $ 5,000,000 | $ 4,320.00 |
| 4 | 1961 Steel Tank Barge<br>Name:EMC 304 | 741 | $ 5,000,000 | $ 3,888.00 |

GAI 22 64    10/03              (Page  2 of  5 )

C  •  O3*01/03/05*OMH5389312-04                    ORIGINAL COPY

0227156

**GREATAMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000.

GAI 22 64  (Ed.10/03)

Policy:  OMH  538-93-12   04
Renewal of:  OMH  538-93-12   03

## POLLUTION POLICY DECLARATIONS PAGE

### SCHEDULE OF VESSELS

| VESSEL | DESCRIPTION/NAME | GRT | AMOUNT OF INSURANCE | PREMIUM |
|---|---|---|---|---|
| 5 | 1973 Steel Deck Barge<br>Name: EMC 423 | 1,397 | $ 5,000,000 | $ 6,552.00 |
| 6 | 1965 Steel Tank Barge<br>Name: EMC 308 | 822 | $ 5,000,000 | $ 3,476.00 |
| 7 | 1963 Steel Deck Barge<br>Name: EMC 309 | 838 | $ 5,000,000 | $ 4,284.00 |
| 8 | 1963 Steel Tank Barge<br>Name: EMC 303 | 678 | $ 5,000,000 | $ 3,570.00 |
| 9 | 1963 Steel Tank Barge<br>Name: EMC 310 | 838 | $ 5,000,000 | $ 4,284.00 |
| 10 | 196? Steel Tank Barge<br>Name: EMC 506 | 1,641 | $ 5,000,000 | $ 7,121.00 |
| 11 | 1963 Steel Tank Barge<br>Name: EMC 332 | 818 | $ 5,000,000 | $ 4,314.00 |

C ＊ O3•O1/O3/O5•OMH5389312-04　　　　　　　　　　　ORIGINAL COPY

0227156

**GREAT AMERICAN**
INSURANCE GROUP
Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI 22 64 (Ed.10/03)

Policy: OMH 538-93-12 04
Renewal of: OMH 538-93-12 03

## POLLUTION POLICY DECLARATIONS PAGE

### SCHEDULE OF VESSELS

| VESSEL | DESCRIPTION/NAME | GRT | AMOUNT OF INSURANCE | PREMIUM |
|---|---|---|---|---|
| 12 | 1968 Steel Tank Barge Name: EMC 302 | 678 | $ 5,000,000 | $ 3,570.00 |
| 13 | 1968 Steel Tank Barge Name: EMC 405 | 1,370 | $ 5,000,000 | $ 6,483.00 |
| 14 | 1968 Steel Tank Barge Name: EMC 407 | 1,370 | $ 5,000,000 | $ 5,930.00 |
| 15 | 1967 Steel Tugboat Name: DAVID E. | 400 | $ 5,000,000 | $ 2,045.00 |
| 16 | 1945 Steel Tugboat Name: BRANDON C | 21 | $ 5,000,000 | $ 864.00 |
| 17 | 1943 Steel Tugboat Name: BECKY E | 335 | $ 5,000,000 | $ 2,299.00 |
| 18 | 1950 Steel Tugboat Name: ALICE E | 183 | $ 5,000,000 | $ 2,484.00 |

C  * O3*01/03/05*OMH5389312-04 · ORIGINAL COPY

0227156

**GREAT AMERICAN**
INSURANCE GROUP

Administrative Offices
580 Walnut Street ·
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI 22 64 (Ed.10/03)

Policy: OMH 538-93-12 04
Renewal of: OMH 538-93-12 03

## POLLUTION POLICY DECLARATIONS PAGE

### SCHEDULE OF VESSELS

| VESSEL | DESCRIPTION/NAME | GRT | AMOUNT OF INSURANCE | PREMIUM |
|---|---|---|---|---|
| 19 | 1964 Steel Tank Barge  Name: EMC 494 | 1,396 | $ 5,000,000 | $ 2,750.00 |
| 20 | 1947 Steel Tugboat  Name: CAROL E | 44 | $ 5,000,000 | $ 950.00 |
| 21 | 1973 Steel Deck Barge  Name: EMC 472 | 752 | $ 5,000,000 | $ 2,250.00 |
| 22 | 1959 Steel Tank Barge  Name: EMC 491 | 1,063 | $ 5,000,000 | $ 5,030.00 |
| 23 | 1967 Steel Tugboat  Name: DANIEL E | 70 | $ 5,000,000 | $ 1,235.00 |

C   03 01/03/05 OMH5389312-04                          ORIGINAL COPY

0227156

**GREATAMERICAN**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI 22 97  (Ed.01/01)

Policy: OMH 538-93-12  04

## OCEAN MARINE FORMS AND ENDORSEMENTS SCHEDULE

It is hereby understood and agreed the following forms and endorsements are
attached to and are a part of this policy:

| Form and Edition | Date Added*<br>or<br>Date Deleted | Form Description |
|---|---|---|
| 1. GAIC527 | 06/01 | POLICY JACKET |
| 2. GAI2213 | 01/01 | NAMED INSURED ENDORSEMENT |
| 3. GAI2224 | 01/01 | AMERICAN INSTITUTE PORT RISK ENDT |
| 4. GAI2264 | 10/03 | POLLUTION POLICY DECLARATIONS |
| 5. GAI2270 | 12/03 | VESSEL OWNER POLLUTION COVERAGE |
| 6. GAI2398 | 08/04 | TERRORISM COVERAGE ENDORSEMENT |
| * IF NOT AT INCEPTION | | |

C   03·01703705·CMH5389312-04
0227156

ORIGINAL COPY

# MARINE INSURANCE POLICY
## VESSEL OWNER POLLUTION COVERAGE

## TABLE OF CONTENTS

**DECLARATIONS PAGE** — The Declarations Page provides the specific information on the insurance you have chosen to protect your liability as per terms of this policy.

| | PAGE |
|---|---|
| AGREEMENT | 1 |
| DEFINITIONS | 1 |
| COVERAGES | 1 |
| LIMITS OF LIABILITY | 2 |
| EXCLUSIONS AND LIMITATIONS | 3 |
| GENERAL CONDITIONS | 3 |

GAI 2270 (Ed. 12/03) XS

C  03*01/03/05*OMH5389312-04

0227156

ORIGINAL COPY

**GREAT AMERICAN** INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI 2270
(Ed. 12 03)

## MARINE INSURANCE POLICY
## VESSEL OWNER POLLUTION COVERAGE

### AGREEMENT

We will provide the insurance in this Policy in return for the premium and subject to all the provisions of this Policy. Coverage is provided subject to the Amount of Insurance shown on the Declarations Page.

This Policy consists of five Sections, A through E. Section A contains important definitions as used in connection with this Policy. Section B describes Your coverage under this Policy. Section C, D and E describe limits, exclusions and other important conditions to this insurance. Please read all the Sections of this Policy.

### SECTION A: DEFINITIONS

In the policy, "You" and "Your" refer to the Named Insured shown in the "Declarations Page." "We," "Us" and "Our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. **CERCLA** – Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. Section 9601, et seq.

2. **INCIDENT** – An incident is an event that exposes You to liability under OPA90 or CERCLA or FWPCA for which Section B provides coverage.

3. **FWPCA** – Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. 1321, et seq.

4. **OPA90** – The Oil Pollution Act of 1990, P.L. 101–380; 33 U.S.C. 2701, et seq.

5. **DEFENSE COSTS** – All Legal expenses and other similar costs that are paid by You as a direct result of an incident insured by this policy.

### SECTION B: COVERAGES

Coverage applies to all Vessels listed on the Declaration Page or on the Schedule of Vessels page for incidents that occur during the effective period of this policy. Any Vessel not listed is not covered. Subject to all EXCLUSIONS and LIMITATIONS in Sections C and D, and subject to all the terms and conditions elsewhere in the Policy, We will indemnify You for the following ten coverages:

1. **OPA90 (Federal)** – Removal costs and expenses paid by You under Section 1002 of OPA90 (33 U.S.C. Section 2702), for which liability would have been imposed under the laws of the United States if You had not voluntarily undertaken the removal of oil.

2. **OPA90 (State)** – Your liability under State law for those removal costs and expenses referred to in Section 1002 (33 U.S.C. Section 2702) of OPA90 but only to the extent that these could have been recovered under OPA90.

3. **OPA90** – Your costs and expenses You have paid either in avoiding or mitigating the liability in 1. OPA90 (Federal) or 2. OPA90 (State) as described above.

C  *  03 * 01 / 03 / 05 * OMH5389312-04                                    ORIGINAL COPY
                              022715 6

4.  CERCLA – Costs and expenses You have paid where liability would have been imposed upon You if You had not acted voluntarily under 107 (a)(1)(A) and (B) of CERCLA (42 U.S.C. Section 9607 (a)(1)(A)) and with specific regard to "removal" "response" or "remedial action" as these terms are defined and applied under Section 101 (23) – (25) of CERCLA (42 U.S.C. Section 9601 (23) – (25)). This coverage includes claims for contributions under Section 1013 (f)(1) of CERCLA (42 U.S.C. Section 9613 (f)(1)).

5.  Miscellaneous Spill Liability – Costs and expenses paid by You to mitigate liabilities for incidents where such occurrences are insured by this policy, but subject to our **WRITTEN EXPRESSED PRE-APPROVAL.**

6.  Defense Costs – Costs and expenses paid by You to investigate and pursue a legal defense against claims or liabilities insured by this Policy. This coverage will terminate upon payment of judgements or settlements which exhaust the amount of insurance as stated in the Declarations Page of this policy.

7.  Firefighting and Salvage – Firefighting, salvage, offloading, and disposal of cargo, but ONLY to the extent that such actions contribute to stopping a discharge or release, OR prevent a substantial threat or a discharge or release under OPA90, CERCLA, or the FWPCA.

8.  Limited Administrative Penalties – Your liability under the section of the Federal Water Pollution Control Act ("FWPCA") that was amended by OPA90 to allow for administrative penalties against You under Section (b)(6)(A)(i) of the FWPCA. The maximum amount of insurance payable by this Policy for this coverage is two hundred and fifty thousand dollars ($250,000) per incident, per Vessel, and shall be a separate limit from the amount of insurance shown elsewhere in the Policy. Penalties imposed under any other section of FWPCA, any other Federal Statute, or the laws of any State or subdivision thereof are specifically EXCLUDED.

9.  Public Relations – Sixty percent of the costs and Expenses paid by You with our prior written consent for public relations during the removal phase of an incident arising out of a claim covered elsewhere in this policy. The maximum amount of insurance payable by this policy for this coverage is one hundred thousand dollars ($100,000) per incident, per Vessel, and shall be a separate limit from the amount of insurance shown elsewhere in the policy.

10. Spill Management – Where an incident has taken place, We shall conduct **SPILL MANAGEMENT AND INCIDENT CONNECTED FUNCTIONS** on Your behalf. Your complete cooperation is required.


## SECTION C: LIMITS OF LIABILITY

The Amount of Insurance stated in the Declarations Page is the most we will pay under this Policy for the total of Coverages B.1. through B.7. above for any one Vessel in any one incident (except for Limited Administrative Penalties and Public Relations as described in Section B.8. and B.9. of this Policy). If more than one Vessel is shown on the Declarations Page or the Schedule of Vessels of this Policy, then the Amount of Insurance shown on the Declarations Page applies separately to each Vessel for each incident.

If, after an incident, You are entitled to limit your liability for the event by application of the Limitation of Liability Act (46 U.S.C. Section 181, et seq.), then the Amount of the Insurance payable for that incident under this Policy will be the lesser of:

1.  the amount to which Your liability is limited under the Limitation of Liability Act, or

2.  the total amount payable as described in the first paragraph of SECTION C: LIMITS OF LIABILITY.


GAI 2270 (Ed. 12/03) XS                    (Page 2 of 5)

C ˙ 03˙01/03/05˙OMH5389312˙04
0227156

ORIGINAL COPY

## SECTION D: EXCLUSIONS AND LIMITATIONS

The following are excluded from the coverage of this policy and We shall not pay or indemnify You for them:

1. Any liability imposed on You under any State law which liability is greater, broader and/or more extensive than the liability that would be imposed under Section 1002 of OPA90 (33 U.S.C. Section 2702) or under CERCLA.

2. Any claim, cost, expense or liability of any nature arising from any of the following:

   a) Willful misconduct on Your part that causes an incident, whether directly or indirectly, and whether in whole or in part. (Willful means an intentional spill or leak or behavior on Your part that is so careless and reckless as to show an indifference to consequences.)

   b) Claims arising out of an act or acts of war.

   c) Claims arising in regard to radioactive materials and/or a nuclear incident.

   d) Any person's illness, disability, physical or personal injury; and/or wrongful death claims or liability under any workman's compensation law or similar law.

   e) An obligation imposed on You by contract and NOT by law.

   f) Fines, punitive damages and penalties and/or exemplary damages, except those covered by Section B.8.

   g) Oil drilling, mineral extraction, and exploration activities.

   h) Any injury or damage that was either expected or intended by You.

## SECTION E: GENERAL CONDITIONS APPLICABLE TO ENTIRE POLICY

1. **DIRECT CLAIMS AGAINST US:** All terms, exclusions, conditions and limitations described in this Policy are applicable to any direct actions against Us concerning a liability of Yours covered, or potentially covered, by this Policy.

2. **COOPERATION:** Your cooperation is required as a condition of this insurance.

3. **SUBROGATION:** In exchange for any payment under this Policy to You, We will be subrogated to all of the rights You would have had against any other person, thing or entity. In this connection You will do nothing to prejudice those rights. You will cooperate with Us fully and do all things that may be necessary to help Us enforce such rights, including but not limited to:

   i) signing all documents necessary for Us to enforce those rights.

   ii) providing Us or designated attorneys with legal papers, documentation, witnesses, etc.

   iii) allowing Us to commence suit or arbitration (at our cost and expense) in Your name.

4. **YOUR ASSISTANCE:** Your failure to provide such assistance and cooperation noted above entitles Us to withhold, cancel, deny, or refuse any payments that might otherwise be due under this Policy. You must also be careful to preserve attorney/client privileges that may apply if attorneys are

GAI 2270 (Ed. 12/03) XS                    (Page 3 of 5)

C  *  03 * 01 / 03 / 05 * OMH5389312 - 04          ORIGINAL COPY
0227156

retained by Us in regard to an Incident. This means that You must maintain the confidentiality of communications between You and Your attorneys in regard to an Incident for which You claim coverage under this Policy. This obligation applies whether or not such attorneys are appointed by Us or by You.

5.  **IF WE ARE SUED DIRECTLY BECAUSE OF AN INCIDENT INVOLVING YOU:** In the event liability is imposed upon Us because of Your activities such as in a direct action brought against Us on account of an Incident, We retain the right to pursue a recovery from You to the extent the action seeks recovery for claims not insured under this Policy, regardless of the reason or theory on which the sums are sought from Us.

6.  **AUTHORIZED SETTLEMENT LIMITATION:** If We authorize a specific sum for the settlement of any claim or liability insured under this policy, and You fail or refuse for any reason to promptly offer that sum in settlement of the claim or liability then our maximum liability for that claim shall NOT EXCEED the sum We had authorized for the settlement.

7.  **CAPTIONS AND HEADINGS:** The Captions and Headings used in this Policy and any endorsements are for convenience of reference only; they do not constitute a part of the Policy's coverage provisions.

8.  **SUIT LIMITATIONS:** No suit, action, or claim against Us, under this policy may be commenced unless all the requirements of this policy have first been complied with, and in no event later than ONE YEAR after the earlier of the following:

    a)  The date final judgment or decree is entered against You for a liability allegedly covered under this POLICY, or

    b)  The date You have made a payment to satisfy a liability allegedly covered by this POLICY even though a judgment or decree has not been entered against You in regard to that liability.

9.  **NO ADMISSION:** In the event of an incident, You must make **NO ADMISSION** of liability without our prior consent. Where a responsible official under CERCLA or OPA90 requests information, You may provide such information without our prior consent.

10.  **EXCESS, WHERE YOU HAVE OTHER INSURANCE COVERAGE FOR YOUR CLAIM:** If at the time of the incident You had other insurance covering some or all of the same liabilities as are covered by this Policy, this Policy will then be in EXCESS of Your other insurance and liability and defense costs will not be shared between this Policy and Your other insurance.

11.  **NOTICE:** It is essential that You provide Us with **IMMEDIATE NOTICE** of the occurrence of any incident which is potentially covered by this POLICY and/or to which You may have liability or as to which You may be required to enter a defense. This notification must be sent to Us at

Great American Insurance Company
Ocean Marine Claims
P.O. Box 2468
Cincinnati, OH 45201.

within thirty (30) days of the incident.

12.  **LIMITATION DUE TO FAILURE TO NOTIFY:** We will not have any exposure or liability under this POLICY if, for lack of IMMEDIATE NOTICE an Incident is made worse or more extensive because We were unable, for lack of IMMEDIATE NOTICE, to undertake effective managerial or remedial measures.

GAI 2270 (Ed. 12/03) XS                    (Page 4 of 5)

C • 03•01/03/05•OMH5389312-04
0227156
ORIGINAL COPY

13. **CANCELLATION:** Either You or We may cancel this Policy by giving thirty (30) days written notice to the other stating when cancellation is to be effective. If You cancel You must send notice to Your agent/producer or:

Great American Insurance Company of New York
65 Broadway
New York, New York 10006

We will notify You of any cancellation by mailing notice to You at the address noted on the Declarations Page of this Policy. We reserve the right to cancel this policy within ten (10) days for nonpayment of premium.

14. **POLICY PERIOD:** This Policy applies only to incidents which occur during the policy period as shown on the Declarations Page.

15. **MISREPRESENTATION:** Any concealment or misrepresentation by You of any material fact or circumstance relating to this insurance, or any claim or incident hereunder will void this policy completely as to any and all claims and incidents, whether such concealment or misrepresentation is deliberate, negligent, inadvertent, innocent, or otherwise.

16. **TRANSFER OF YOUR INTEREST IN THIS POLICY:** Your rights and duties under this Policy may not be assigned without our written consent. Upon any sale, transfer, or other change in ownership of any Vessel(s) named in the Declarations Page, this Policy will be cancelled as of that time and date and a pro rata return premium will be granted.

17. **CONFORMING WITH STATUTE:** Any terms of this Policy which are in conflict with the State in which this Policy is issued are hereby amended to conform with such statutes, with respect to general conditions only.

18. **CHOICE OF LAW:** The terms of this Policy shall be construed pursuant to, and the rights of the parties hereto shall be governed and controlled by, the general maritime law of the United States; and in the absence thereof, the laws of the State of New York.

19. **SIGNATORY CLAUSE:** This Policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with such provisions, stipulations, and agreements as may be added hereto.

In witness thereof, the Company has caused this Policy to be signed by its President and Secretary, but this Policy shall not be valid unless countersigned by an Authorized Representative of this Company.

_Ken Holley Harrell_
Secretary

_Carl H. Lindner III_
President

GAI 2270 (Ed. 12/03) XS                    (Page 5 of 5)

C    •  03•01/03/05•OMH5389312-04                          ORIGINAL COPY

0227156

**GREAT AMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI 22 13  (Ed.01/01)

Policy: OMH  538-93-12   04

## NAMED INSURED ENDORSEMENT

It is agreed that the Named Insured and the Form of Business Organization shown in the Declarations is amended to read as follows:

SERVICE WELDING & SHIPBUILDING, LLC, EGAN MARINE CORPORATION, EGAN MARINE TANKERING, DENNIS EGAN, OWNER

GAI 22 13     01/01                        (Page   1 of  1 )

C  *  03•01/03/05•OMH5389312-04
0227156

ORIGINAL COPY

**GREAT AMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI 2398
(Ed. 08 04)

## TERRORISM RISK INSURANCE ACT OF 2002 –
## DISCLOSURE OF PREMIUM AND COVERAGE ENDORSEMENT

THIS ENDORSEMENT IS ISSUED IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

### DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

Terrorism Premium (Certified Acts) $      0.00

**A.  Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a Notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is as shown above or in the policy Declarations.

**B.  Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

**All other terms and conditions remain unchanged.**

GAI 2398 (Ed. 08/04) PRO                          (Page 1 of 1)

C • 03•01/03/05•OMH5389312-04
0227156.

**GREATAMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI 22 24  (Ed.01/01)

Policy: OMH  538-93-12   04

American Institute
**PORT RISK ENDORSEMENT**
(January 18, 1970)

This endorsement only applies to the Vessel(s) listed below:

| Vessel No. | Vessel Description |
|---|---|
| 15 | 1967 Steel Tugboat<br>Name: DAVID E. |

The clauses set forth below shall prevail over any Policy provisions inconsistent therewith.

This insurance is subject to the following warranties:

(1) The Vessel shall be laid-up in the port of

15200 CANAL BANK ROAD, LEMONT, IL

with liberty to shift (in tow or otherwise) between approved lay-up sites within the port or to proceed to cargo or fitting out berths within said port prior to commencing or proceeding on a voyage;

(2) the Vessel shall not be used as a storage ship or for lightering purposes;

(3) the Vessel shall undergo no repairs or alterations. In case of any breach of this warranty (3) the Vessel shall be held covered, provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured, and (b) any amended terms of cover and any additional premium required by the Underwriters are agreed to by the Assured.

If the Vessel commences, or proceeds on, a voyage during the term of this insurance, this policy shall thereupon terminate as soon as the Vessel leaves her moorings to depart from the above named port.

It is a further condition of this insurance that the manner and place of lay-up of the Vessel shall continuously be subject to the approval of the Underwriters, and if the Assured shall decline or fail to carry out any recommendation made by them, from time to time, this Policy may be cancelled by notice in the manner provided for in this Policy relating to cancellation for non-payment of premium.

GAI 22 24    01/01              (Page  1 of  1 )

C • 03•01/03/05•OMH-538-93-12-04

0227156

**GREAT AMERICAN.**
INSURANCE GROUP
Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI 22 24  (Ed.01/01)

Policy: OMH 538-93-12   04

### American Institute
### PORT RISK ENDORSEMENT
### (January 18, 1970)

This endorsement only applies to the Vessel(s) listed below:

| Vessel No. | Vessel Description |
|---|---|
| 16 | 1945 Steel Tugboat<br>Name: BRANDON C |

The clauses set forth below shall prevail over any Policy provisions inconsistent therewith.

This insurance is subject to the following warranties:

(1)  The Vessel shall be laid-up in the port of

15200 CANAL BANK ROAD, LEMONT, IL

with liberty to shift (in tow or otherwise) between approved lay-up sites within the port or to proceed to cargo or fitting out berths within said port prior to commencing or proceeding on a voyage;

(2)  the Vessel shall not be used as a storage ship or for lightering purposes;

(3)  the Vessel shall undergo no repairs or alterations. In case of any breach of this warranty (3) the Vessel shall be held covered, provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured, and (b) any amended terms of cover and any additional premium required by the Underwriters are agreed to by the Assured.

If the Vessel commences, or proceeds on, a voyage during the term of this insurance, this policy shall thereupon terminate as soon as the Vessel leaves her moorings to depart from the above named port.

It is a further condition of this insurance that the manner and place of lay-up of the Vessel shall continuously be subject to the approval of the Underwriters, and if the Assured shall decline or fail to carry out any recommendation made by them, from time to time, this Policy may be cancelled by notice in the manner provided for in this Policy relating to cancellation for non-payment of premium.

GAI 22 24    01/01              (Page  1 of  1 )

C  •  03•01/03/05•OMH5389312•04

0227156

**GREATAMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI 22 24  (Ed.01/01)

Policy: OMH 538-93-12  04

### American Institute
### PORT RISK ENDORSEMENT
### (January 18, 1970)

This endorsement only applies to the Vessel(s) listed below:

| Vessel No. | Vessel Description |
|---|---|
| 17 | 1945 Steel Tugboat<br>Name: BECKY E |

The clauses set forth below shall prevail over any Policy provisions inconsistent therewith.

This insurance is subject to the following warranties:

(1)  The Vessel shall be laid—up in the port of

15200 CANAL BANK ROAD, LEMONT, IL

with liberty to shift (in tow or otherwise) between approved lay—up sites within the port or to proceed to cargo or fitting out berths within said port prior to commencing or proceeding on a voyage;

(2)  the Vessel shall not be used as a storage ship or for lightering purposes;

(3)  the Vessel shall undergo no repairs or alterations. In case of any breach of this warranty (3) the Vessel shall be held covered, provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured, and (b) any amended terms of cover and any additional premium required by the Underwriters are agreed to by the Assured.

If the Vessel commences, or proceeds on, a voyage during the term of this insurance, this policy shall thereupon terminate as soon as the Vessel leaves her moorings to depart from the above named port.

It is a further condition of this insurance that the manner and place of lay—up of the Vessel shall continuously be subject to the approval of the Underwriters, and if the Assured shall decline or fail to carry out any recommendation made by them, from time to time, this Policy may be cancelled by notice in the manner provided for in this Policy relating to cancellation for non—payment of premium.

GAI 22 24     01/01                   (Page   1 of   1 )

C · 03*01/03/05*OMH538-93-12·04

0227156

GREAT AMERICAN
INSURANCE GROUP

Administrative Offices
580 Walnut Street ·
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI 22 24 (Ed.01/01)

Policy: OMH 538-93-12  04

### American Institute
### PORT RISK ENDORSEMENT
### (January 18, 1970)

This endorsement only applies to the Vessel(s) listed below:

| Vessel No. | Vessel Description |
|---|---|
| 18 | 1950 Steel Tugboat<br>Name: ALICE E |

The clauses set forth below shall prevail over any Policy provisions inconsistent therewith.

This insurance is subject to the following warranties:

(1) The Vessel shall be laid–up in the port of

15200 CANAL BANK ROAD, LEMONT, IL

with liberty to shift (in tow or otherwise) between approved lay–up sites within the port or to proceed to cargo or fitting out berths within said port prior to commencing or proceeding on a voyage;

(2) the Vessel shall not be used as a storage ship or for lightering purposes;

(3) the Vessel shall undergo no repairs or alterations. In case of any breach of this warranty (3) the Vessel shall be held covered, provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured, and (b) any amended terms of cover and any additional premium required by the Underwriters are agreed to by the Assured.

If the Vessel commences, or proceeds on, a voyage during the term of this insurance, this policy shall thereupon terminate as soon as the Vessel leaves her moorings to depart from the above named port.

It is a further condition of this insurance that the manner and place of lay–up of the Vessel shall continuously be subject to the approval of the Underwriters, and if the Assured shall decline or fail to carry out any recommendation made by them, from time to time, this Policy may be cancelled by notice in the manner provided for in this Policy relating to cancellation for non–payment of premium.

GAI 22 24 · 01/01          (Page 1 of 1 )

C   *   O3*01/03/05*OMH5389312-04

0227156

**GREAT AMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI   22   24   (Ed. 01/01)

Policy: OMH  538-93-12  04

## American Institute
## PORT RISK ENDORSEMENT
## (January 18, 1970)

This endorsement only applies to the Vessel(s) listed below:

| Vessel No. | Vessel Description |
|---|---|
| 19 | 1964 Steel Tank Barge<br>Name: EMC 494 |

The clauses set forth below shall prevail over any Policy provisions inconsistent therewith.

This insurance is subject to the following warranties:

(1)   The Vessel shall be laid-up in the port of

15200 CANAL BANK ROAD, LEMONT, IL

with liberty to shift (in tow or otherwise) between approved lay-up sites within the port or to proceed to cargo or fitting out berths within said port prior to commencing or proceeding on a voyage;

(2)   the Vessel shall not be used as a storage ship or for lightering purposes;

(3)   the Vessel shall undergo no repairs or alterations. In case of any breach of this warranty (3) the Vessel shall be held covered, provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured, and (b) any amended terms of cover and any additional premium required by the Underwriters are agreed to by the Assured.

If the Vessel commences, or proceeds on, a voyage during the term of this insurance, this policy shall thereupon terminate as soon as the Vessel leaves her moorings to depart from the above named port.

It is a further condition of this insurance that the manner and place of lay-up of the Vessel shall continuously be subject to the approval of the Underwriters, and if the Assured shall decline or fail to carry out any recommendation made by them, from time to time, this Policy may be cancelled by notice in the manner provided for in this Policy relating to cancellation for non-payment of premium.

GAI  22  24       01/01                    (Page  1 of  1 )

C • 03*01/03/05*OMH5389312-04

0227156

**GREATAMERICAN.**
INSURANCE GROUP

Administrative Offices
580 Walnut Street
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI 22 24  (Ed.01/01)

Policy: OMH 538-93-12  04

## American Institute
## PORT RISK ENDORSEMENT
## (January 18, 1970)

This endorsement only applies to the Vessel(s) listed below:

| Vessel No. | Vessel Description |
|---|---|
| 20 | 1947 Steel Tugboat<br>Name: CAROL E |

The clauses set forth below shall prevail over any Policy provisions inconsistent therewith.

This insurance is subject to the following warranties:

(1)  The Vessel shall be laid-up in the port of

15200 CANAL BANK ROAD, LEMONT, IL

with liberty to shift (in tow or otherwise) between approved lay-up sites within the port or to proceed to cargo or fitting out berths within said port prior to commencing or proceeding on a voyage;

(2)  the Vessel shall not be used as a storage ship or for lightering purposes;

(3)  the Vessel shall undergo no repairs or alterations. In case of any breach of this warranty (3) the Vessel shall be held covered, provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured, and (b) any amended terms of cover and any additional premium required by the Underwriters are agreed to by the Assured.

If the Vessel commences, or proceeds on, a voyage during the term of this insurance, this policy shall thereupon terminate as soon as the Vessel leaves her moorings to depart from the above named port.

It is a further condition of this insurance that the manner and place of lay-up of the Vessel shall continuously be subject to the approval of the Underwriters, and if the Assured shall decline or fail to carry out any recommendation made by them, from time to time, this Policy may be cancelled by notice in the manner provided for in this Policy relating to cancellation for non-payment of premium.

GAI 22 24    01/01                    (Page  1 of  1 )

0227156

**GAI 22 24 (Ed.01/01)**

Policy: OMH 538-93-12 04

*Administrative Offices*
*580 Walnut Street*
*Cincinnati, Ohio 45202*
*Tel: 1-513-369-5000*

**GREAT AMERICAN.**
INSURANCE GROUP

## American Institute
## PORT RISK ENDORSEMENT
## (January 18, 1970)

This endorsement only applies to the Vessel(s) listed below:

| Vessel No. | Vessel Description |
|---|---|
| 21 | 1973 Steel Deck Barge<br>Name: EMC 472 |

The clauses set forth below shall prevail over any Policy provisions inconsistent therewith.

This insurance is subject to the following warranties:

(1) The Vessel shall be laid-up in the port of

15200 CANAL BANK ROAD, LEMONT, IL

with liberty to shift (in tow or otherwise) between approved lay-up sites within the port or to proceed to cargo or fitting out berths within said port prior to commencing or proceeding on a voyage;

(2) the Vessel shall not be used as a storage ship or for lightering purposes.

(3) the Vessel shall undergo no repairs or alterations. In case of any breach of this warranty (3) the Vessel shall be held covered, provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured, and (b) any amended terms of cover and any additional premium required by the Underwriters are agreed to by the Assured.

If the Vessel commences, or proceeds on, a voyage during the term of this insurance, this policy shall thereupon terminate as soon as the Vessel leaves her moorings to depart from the above named port.

It is a further condition of this insurance that the manner and place of lay-up of the Vessel shall continuously be subject to the approval of the Underwriters, and if the Assured shall decline or fail to carry out any recommendation made by them, from time to time, this Policy may be cancelled by notice in the manner provided for in this Policy relating to cancellation for non-payment of premium.

GAI 22 24    01/01                    (Page  1 of  1 )

C • 03•01/03/05•OMH538-93-12-04
0227156

**ATAMERICAN**
INSURANCE GROUP

Administrative Offices
580 Walnut Street•
Cincinnati, Ohio 45202
Tel: 1-513-369-5000

GAI 22 24  (Ed.01/01)

Policy: OMH  538-93-12  04

## American Institute
## PORT RISK ENDORSEMENT
## (January 18, 1970)

This endorsement only applies to the Vessel(s) listed below:

| Vessel No. | Vessel Description |
|---|---|
| 23 | 1967 Steel Tugboat<br>Name: DANIEL E |

The clauses set forth below shall prevail over any Policy provisions inconsistent therewith.

This insurance is subject to the following warranties:

(1)  The Vessel shall be laid-up in the port of

15200 CANAL BANK ROAD, LEMONT, IL

with liberty to shift (in tow or otherwise) between approved lay-up sites within the port or to proceed to cargo or fitting out berths within said port prior to commencing or proceeding on a voyage;

(2)  the Vessel shall not be used as a storage ship or for lightering purposes;

(3)  the Vessel shall undergo no repairs or alterations. In case of any breach of this warranty (3) the Vessel shall be held covered, provided (a) notice is given to the Underwriters immediately following receipt of knowledge thereof by the Assured, and (b) any amended terms of cover and any additional premium required by the Underwriters are agreed to by the Assured.

If the Vessel commences, or proceeds on, a voyage during the term of this insurance, this policy shall thereupon terminate as soon as the Vessel leaves her moorings to depart from the above named port.

It is a further condition of this insurance that the manner and place of lay-up of the Vessel shall continuously be subject to the approval of the Underwriters, and if the Assured shall decline or fail to carry out any recommendation made by them, from time to time, this Policy may be cancelled by notice in the manner provided for in this Policy relating to cancellation for non-payment of premium.

Exhibit "B"

**U.S. Department of
Homeland Security**

**United States
Coast Guard**

Director
United States Coast Guard
National Pollution Funds Center

4200 Wilson Blvd. Suite 1000
Arlington, VA  22203-1804
Staff Symbol: ca
Phone: 202-493-6849
FAX: (202) 493-6937

5890
CA-D Ser 004/05

January 21, 2005

CERTIFIED MAIL - RETURN RECEIPT REQUESTED
7001 1940 0001 6794 0847

Egan Marine Corp.
Attn: Robin Chanda
15200 E. Canal Bank Road
Lemont IL 60439

RE:  T/B EMC423
FPN:  G05005

Dear Sir or Madam:

On 19 January 2005, your vessel the T/B EMC423 discharged oil into the Chicago Sanitary and Ship Canal, a navigable water of the United States. The Oil Pollution Act of 1990, 33 USC 2701 et. seq., requires that we formally designate the T/B EMC423 as the source of the discharge and notify you that as its owner/operator, you incur certain legal responsibilities to the U.S. Government and others damaged by this incident. You are liable for removal costs and damages as specified in 33 USC 2702 and must advertise the procedures by which persons who have claims for removal costs and damages may submit their claims to you, as specified in 33 USC 2714.

You must publicly advertise this designation and the procedures by which claims may be presented to you. The advertisement must begin within 15 days of the date of this letter and must continue for no less than 30 days. Enclosure (1) outlines the required content of this advertisement and enclosure (2) is a sample advertisement. You may choose to follow this sample but are not required to do so as long as your advertisement contains the required information. Your advertisement must be disseminated in such a manner that all potential claimants are notified. To accomplish this, we require that you advertise in the newspaper(s) having general circulation in the area(s) affected. We also require that you post notices in marinas affected and provide direct notification where individuals have been identified as receiving damages from your spill. You may propose other methods of advertisement and notification, but they may be used only when approved in advance by the National Pollution Funds Center. Please note that a claimant may present a claim for interim short-term damages representing less than the full amount to which the claimant ultimately may be entitled. Payment of such claim shall not preclude recovery for damages not reflected in the paid or settled partial claim.

You are directed to inform us of the specifics of your advertising, including the name of any newspaper or other publication in which the advertisement is run, the geographical area covered by the publication, and how often the advertisement will appear, as appropriate. Send us copies of the advertisement and advise us in writing that you have begun advertising within 20 days of receipt of this letter, otherwise we will assume that you did not comply with these requirements. If you do not comply with these requirements, the National Pollution Funds Center will advertise for claims. If we advertise, you will be charged for our costs, as well as for the costs of any administration, adjudication and payment of claims.

You may deny this designation within 5 days of receipt of this Notice of Designation. Your denial must be in writing, identify this Notice of Designation, give the reasons for the denial, include a copy of all supporting documents, and must be submitted to Eric Bunin, Claims Manager, at the above address. If you deny this designation, the National Pollution Funds Center will advertise for claims. If we advertise and you are later judged to be responsible for the discharge, you will be charged for our costs, as well as for the costs of any administration, adjudication and payment of claims.



DEPOSITION
EXHIBIT
Egan 46
3/3/06 DS

E 1191

Subj:  TANK BARGE EMC423                                    5890
                                                           1/21/2005

You may contact the Claims Manager, Eric Bunin, at 1-800-358-2897 ext. 36849 or (800) 280-7118 if you have any
questions.  The FAX number is (202) 493-6937.

                                        Sincerely,

                                        ERIC BUNIN
                                        U.S. Coast Guard
                                        Claims Manager

Encl:    (1)  Content of Advertisement
         (2)  Sample Advertisement

2

E 1192

Exhibit "C"

05/19/2005 15:47 FAX 312 802 9900          E MAR, P.C.                                      Ø 007/009
MAY-18-2005  18:59                                                                          P. 05/07

**U.S. Department of**          Commanding Officer              215 West 83rd St., Suite D
**Homeland Security**           United States Coast Guard       Burr Ridge, IL 60527
                                Marine Safety Office Chicago    Phone: (630) 986-2153
**United States**                                               FAX: (630) 986-2120
**Coast Guard**

                                                                May 18, 2005

Egan Marine Corporation
Attn:  Dennis H. Egan, President
15200 Canal Bank Road
P.O. Box 669
Lemont, IL 60439



SUBJ:  TERMINATION OF EMERGENCY RESPONSE

This letter is in response to your letter dated May 15, 2005 from Mr. Tom Neumann, delivered to
my office on Monday, May 16th, on behalf of Egan Marine Corporation.

I note from paragraph 2 on the second page of that letter that "The barge is certainly stable
enough to move.  The temporary repairs on the hull leaks have been strengthened and the leaks
minimized." I further note from consultations with my staff on scene that the cited leaks relate to
the ingress of water, not the release of any hazardous material into the waters of the United
States. This further information has been amplified and validated by the successful transit of the
barge from its former location at approximate mile marker 317.5 on the Chicago Sanitary and
Ship Canal (CSSC) to the Service Welding and Shipbuilding facility at approximate mile marker
301.3, where it is now safely moored to the shore at that facility and away from the navigable
channel of the CSSC.

Consequently, I have determined that this release has been contained and the cargo currently on
board the EMC423 no longer represents a substantial threat of a discharge of oil or a hazardous
substance. Therefore, pursuant to my authority as Federal On Scene Coordinator (FOSC) under
the National Contingency Plan (NCP), including 40 CFR 300.320(b) and other applicable
authority, that portion of this emergency response relating to the barge EMC423 and the cargo
contained therein, and related to the cargo contained in the tank barge EMC 506 is complete,
effective at the time the EMC 423 was successfully moored at the above mentioned facility. The
only remaining emergency removal operations that remain under aegis of my FOSC authority are
the operations related to the removal of any oil related to this incident which remains on the
bottom of the CSSC in the vicinity of the original explosion, fire and subsequent removal
operations. You will be advised under separate cover on how to proceed with these operations.

                                                T.W. Carter
                                                Captain, U.S. Coast Guard
                                                Federal On Scene Coordinator

Acknowledgement of delivery: only JW

Signature: _____    Title: _____JC_____

Date: __5/18/05__             Time: __1885__

EXHIBIT "2"



Not Reported in F.Supp.2d                                                        Page 1
Not Reported in F.Supp.2d, 2001 WL 578262 (S.D.Ill.), 87 Fair Empl.Prac.Cas. (BNA) 1094, 80 Empl. Prac. Dec. P 40,579

CWilfong v. Rent-A-Center, Inc.
S.D.Ill.,2001.

United States District Court, S.D. Illinois.
Claudine WILFONG, Lisa Adams, Terry Blackburn,
Lisa Chenelle, Toni Cohen, Marsha Cromwell,
DeEllen Dickerson, Veronica Dropthmore, Kim
Hammer, Mary Johnson, Kathleen Liphart, Teia
Malone, Karen Dueker Meyer, Dawn Pemberton,
Hermanette Portis, Amy Pratt, Linda Sheattler,
Michelle Smith, Melanie Watson, Linda Wigger and
Robin Yeubanks, Plaintiffs,
v.
RENT-A-CENTER, INC., Defendant.
**No. 00-CV-0680-DRH.**

May 14, 2001.

Jerome J. Schlichter, Schlichter, Bogard et al.,
Swansea, Mary Anne Sedey, Attorney at Law, St.
Louis, Mo, for Claudine Wilfong, Lisa Adams, Terry
Blackburn, Lisa Chenelle, Toni Cohen, Marsha
Cromwell, Deellen Dickerson, Veronica Dropthmore,
Kim Hammer, Mary Johnson, Karen Dueker Meyer,
Dawn Pemberton, Hermanette Portis, Amy Pratt,
Linda Sheattler, Michele Smith, Melanie Watson,
Linda Wigger, Robin Yeubanks, Kathleen Liphart,
Teia Malone, plaintiffs.

John L. Gilbert, Hinshaw & Culbertson, Belleville,
Thomas E. Berry, Jr., Kevin J. Lorenz, McMahon,
Berger et al., St. Louis, MO, Larry M. Bauer, Eric A.
Todd, Stinson, Mag et al., St. Louis, MO, Michael V.
Abcarian, Michael E. Coles, Franklin E. Wright, Lisa
W. Sorrell, Dan C. Dargene, John D. Smart,
Winstead, Sechrest et al., Dallas, TX, for Rent A
Center Inc, defendants.

MEMORANDUM AND ORDER

HERNDON, District J.

I. *Introduction*

**\*1** Now before the Court is the Equal Employment
Opportunity Commission's motion for leave to
intervene (Doc. 44). Rent-A-Center objects the
motion. Pursuant to FEDERAL RULE OF CIVIL

PROCEDURE 24(b), the Court grants the motion.

In August 2000, Plaintiffs brought this action
pursuant to Title VII of the Civil Rights Act of 1964,
42 U.S.C. § 2000e*et seq.* (Doc. 1). The Plaintiffs are
residents of various states and allegedly have all been
employed or have applied for employment with
Defendant Rent-A-Center, Inc. ("Rent-A-Center").
On October 18, 2000, Plaintiffs filed an amended
complaint adding additional Plaintiffs (Doc. 15).
Rent-A-Center, a corporation with its headquarters in
Plano, Texas, operates rent-to-own stores in various
locations throughout the United States. Plaintiffs seek
to be certified as representatives of a class, alleging
that Rent-A-Center has maintained a pattern and
practice of sex discrimination against women
employees and women applicants for employment.

On February 6, 2001, the Court denied Rent-A-
Center's motion to transfer (Doc. 24). Now before the
Court is the EEOC's motion for leave to
intervene.[FN1] The EEOC argues that because this is a
case of general importance it should be allowed to
intervene to advance the same Title VII claims of
discrimination as well as a claim that Rent-A-Center
has failed to preserve records it was required to
preserve under Title VII. Rent-A-Center responds
that the motion should be denied because the
intervention will unduly belay the adjudication of the
issues, prejudice Rent-A-Center and expand the
scope of the original lawsuit. Based on the reasons
stated herein, the Court grants the motion to
intervene.

> FN1. As of this date, Plaintiffs have not
> objected to the EEOC's motion for leave to
> intervene. In fact, the EEOC asserts that
> Plaintiffs have consented to the motion
> (Doc. 45. p 3).

II. *Permissive Intervention*

FEDERAL RULE OF CIVIL PROCEDURE 24(b)
states in pertinent part:

Upon timely application anyone may be permitted to
intervene in an action: (1) when a statute of the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                      Page 2
Not Reported in F.Supp.2d, 2001 WL 578262 (S.D.Ill.), 87 Fair Empl.Prac.Cas. (BNA) 1094, 80 Empl. Prac. Dec. P
40,579

United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

It is well established that district courts have broad discretion to grant or deny motions to intervene under Rule 24(b)(2).*See Sokaogon Chippewa Community v. Babbitt,* 214 F.3d 941, 949 (7th Cir.2000); *United States v. 36.96 Acres of Land,* 754 F.2d 855, 860 (7th Cir.1985). In deciding whether to grant permissive intervention under Rule 24(b)(2), the court must consider three requirements: (1) whether the petition was timely; (2) whether a common question of law or fact exists; and (3) whether granting the petition to intervene will unduly delay or prejudice the adjudication of the rights of the original parties. *Security Ins. Co. of Hartford v. Schipporeit,* 69 F.3d 1377, 1381 (7th Cir.1995)*Southmark Corp. v. Cagan,* 950 F.2d 416, 419 (7th Cir.1991)

### III. *Analysis*

#### A. *Timeliness*

**\*2** The Court must consider the "totality of the circumstances" to determine whether a petition is timely. *United States v. City of Chicago,* 908 F.2d 197, 199 (7th Cir.1990), cert. denied498 U.S. 1067 (1991). In particular, four factors must be considered: (1) the length of time the intervenor knew or should have known of his or her interest in this case, (2) the prejudice to the original parties caused by the delay, (3) the resulting prejudice to intervenor if the motion is denied, and (4) any unusual circumstances. *Shea v. Angulo,* 19 F.3d at 346;*Ragsdale v. Turnock,* 941 F.2d 501, 504 (7th Cir.1991), cert. denied502 U.S. 1035 (1992). The test establishes a reasonableness standard: "potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly."*Nissei Sangyo Ant., Ltd. v. United States,* 31 F.3d 435, 438 (7th Cir.1994). The most important consideration in this regard is whether the delay will prejudice the original parties to the case. *Id.* (citing Wright & Miller, Federal Practice & Procedure: Civil 2d § 1916 (1986)). Whether a petition is timely presented is within the

district court's discretion. *City of Chicago,* 908 F.2d at 199.

Here, the EEOC moved to intervene five months after Plaintiffs filed their amended complaint. Discovery on the merits of this case has been stayed until ruling on Plaintiffs' motion for class certification. The only discovery which has been permitted has been on the class certification issues.[FN2]Further, the EEOC filed its motion prior to Plaintiffs filing their motion for class certification. The Court does not find the five month gap between the filing of the amended complaint and the filing of the motion to intervene to be prejudicial to Rent-A-Center. Under the totality of the circumstances, the motion to intervene is timely.

> [FN2]. Pursuant to the Scheduling and Discovery Order entered on November 9, 2000, Plaintiffs have up to and including October 1, 2001, to file their motion for class certification (Doc. 17). As of this date, Plaintiffs have not filed their motion for class certification.

#### B. *Common Questions of Law and Fact*

The questions of law and fact to be raised by the EEOC are virtually identical to Plaintiffs' claims with the exception of the EEOC's claim that the Rent-A-Center violated § 709(c) of Title VII, 42 U.S.C. § 2000e-8(c) and 29 C.F.R. § 1602.14 by failing to preserve employment records. The Court finds that the additional claim asserted by the EEOC relates to the allegations in the amended complaint. Thus, the EEOC has satisfactorily established that its claims and Plaintiffs' claims involve common questions of facts.

#### C. *Prejudice or Delay of Adjudication*

The original parties have not yet initiated discovery on the merits of Plaintiffs' claims. This process will not begin until after the Court rules on the motion for class certification. The motion for class certification will not be ripe for disposition until after December 3, 2001 (the date Rent-A-Center's response the class certification motion is due). Permitting the EEOC to join the case at this juncture will not delay the progression of this case through pre-trial discovery or trial preparation. Moreover, the EEOC has intervened many times in other similar litigations and are thus

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2001 WL 578262 (S.D.Ill.), 87 Fair Empl.Prac.Cas. (BNA) 1094, 80 Empl. Prac. Dec. P
40,579

well-versed in the subject matter of the issues to be
tried before the Court. Accordingly, the Court
concludes that intervention will not prejudice or
delay adjudication of this case.

## IV. *Conclusion*

**\*3** Accordingly, the Court GRANTS the EEOC's
motion to intervene (Doc. 44). The Court DIRECTS
the Clerk of the Court to docket and file stamp the
Intervenor's Complaint *instanter.*

IT IS SO ORDERED.

S.D.Ill.,2001.
Wilfong v. Rent-A-Center, Inc.
Not Reported in F.Supp.2d, 2001 WL 578262
(S.D.Ill.), 87 Fair Empl.Prac.Cas. (BNA) 1094, 80
Empl. Prac. Dec. P 40,579

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.