**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Judge Harry D. Leinenweber |
| | ) | |
| **EGAN MARINE CORPORATION,** | ) | Case No.: 08 C 3160 |
| | ) | |
| **Defendant.** | ) | |

## FEE PETITION

NOW COMES Egan Marine Corporation ("EMC"), on its own behalf and on behalf of Great American Insurance Company ("GAIC"), by and through its attorneys, Troutman Sanders LLP and Marwedel, Minichello & Reeb, P.C., and for its Fee Petition, states as follows:

1. EMC, on its own behalf and on behalf of GAIC, seeks the recovery of attorneys' fees and other expenses incurred in the defense of the present action, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, federal common law, and under the Court's inherent authority to award attorneys' fees. EMC further seeks the recovery of attorneys' fees and other expenses incurred since the date of the occurrence on January 19, 2005, as these fees and other expenses directly assisted in the presentation of the defense before this Court.

2. EMC is, and at all relevant times was, a "party" as defined in 28 U.S.C. § 2412(d)(2)(B). It is a corporation, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which did not have more than 500 employees at the time the civil action was filed. See Affidavit of Dennis H. Egan, attached hereto as Exhibit 1.

3. Since very early after the incident of January 19, 2005, it has been the United States of America's ("Government") theory that the explosion aboard the EMC-423 was caused by Alex Oliva's use of a propane torch to heat the cargo pump aboard the EMC-423, and that the

torch ignited vapors that were escaping from the cargo hold through an open standpipe on the deck of the EMC-423.

4. The Government, through the Coast Guard, pursued this theory during the Coast Guard hearings that were conducted in April and June-July of 2005. The Government presented this theory as its theory of liability during the trial of this cause. The Government has even gone so far as to indict EMC and Dennis Michael Egan, the Captain of the M/V Lisa E, on criminal charges that they negligently caused the death of Alex Oliva, again, based on this theory.

5. It has now been seven years since the tragic explosion aboard the EMC 423 and, yet, there has never been sufficient evidence to support the Government's theory.

6. For reasons that are unknown to EMC and GAIC, the Government has unmercifully pursued EMC in every way possible – administratively, civilly and criminally – based solely on its torch theory. Five separate governmental agencies have been involved in the investigation of the explosion and/or the prosecution of the civil and criminal actions that were filed as a result of the explosion including, the U.S. Coast Guard; the Bureau of Alcohol, Tobacco, Firearms and Explosives; the U.S. Environmental Protection Agency; the Department of Justice; and, the Department of Defense.

7. After seven years, countless man hours, and what must amount to a significant amount of tax payer money, the Government failed to produce any credible evidence that a torch was used on the barge at the time of the explosion. (*See*, Memorandum Opinion and Order ("Opinion"), Docket No. 329, p. 6). The Government also failed to prove that the standpipe on the barge was in an open condition or that any vapors were escaping from the standpipe that could have been ignited by a torch. (Opinion, pp. 7-8). The only "evidence" the Government could produce to support its case was speculation that a torch may have been used based "on

questionable law enforcement reports and/or on evidence that was excluded as unreliable at trial when they assumed or concluded that the standpipe was open and a propane torch was used." (Opinion, p. 7).

8. Not only did the Government fail to produce any credible evidence to support its theory, but the Government withheld information from Egan Marine in this action regarding Bobby Jo Griffin, an eyewitness who the Government failed to disclose to EMC in the civil action. Mr. Griffin's investigatory interviews directly contradicted the Government's torch theory. However, the Government did not provide that information to EMC as part of this proceeding, and withheld crucial information that completely defeated the Government's claim. EMC only learned of Bobby Jo Griffin through the criminal case.

9. The Government expended all of the above-referenced resources to persecute a small towing company that had suffered through a horrendous explosion, resulting in the tragic loss of one of its crew members, and the loss of its barge. EMC did everything that was required of it and still the Government went after it with a vengeance. The stipulated testimony of Captain David Fish of the Coast Guard shows that EMC complied with all of its legal obligations to aid in the clean-up. (Opinion, p. 15). EMC and its insurers spent over $8,600,000 in expenses related to the raising of the barge and the clean-up of the oil that was spilled from the barge.

10. The cost of the Government's unfounded actions against EMC is staggering. Attorneys' fees and expenses in the amount of $3,094.500.33 were incurred to investigate and defend EMC against the Government's spurious allegations.

11. All of these expenses were incurred because the Government pursued EMC on a theory for which there was no substantial justification. The evidence produced at trial, and the

Government's actions from the date of the incident through trial, show that the Government was not substantially justified in filing this action.

12. The Equal Access to Justice Act ("EAJA") provides for the award of attorneys' fees and certain other expenses "to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action." 28 U.S.C. § 2412(a)(1). The EAJA allows for the recovery of attorneys' fees and other expenses under two separate provisions, both of which apply to EMC's request for reimbursement of fees and other expenses.

13. EMC submits that EMC is the prevailing party in this litigation, as a Judgment Order was entered in its favor on October 13, 2011. See Judgment Order, Docket #330. The judgment became a final and non-appealable judgment on December 13, 2011. Rule 4(B) Fed. R. App.Pro. Fee petitions must be filed within 30 days of the entry of a final judgment. The time for filing a petition for fees under 28 U. S. C. § 2412(d)(1)(B) begins to run after the time to appeal the judgment has expired. *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (U.S. 1991). Therefore, this Fee Petition was timely filed.

14. Section (d) of the EAJA provides that a prevailing party is entitled to recover attorneys' fees and other expenses, "unless the court finds that the position of the Government was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

15. EMC and GAIC assert that the position taken by the Government was not substantially justified, and there are no special circumstances present that would make an award under the EAJA unjust. In fact, as will be explained more thoroughly in the Memorandum of Law in Support of the Fee Petition, this Court's findings of fact and conclusions of law on the

4

significant evidentiary issues show that the Government was not substantially justified in bringing this action.

16. The Government's theory that a propane torch was used by Alex Oliva, and that the torch was the cause of the explosion, was based on pure speculation, and was contrary to the testimony of the eyewitnesses and the surveillance camera still photos showing the EMC-423 just prior to and during the explosion. None of the eyewitnesses to the explosion saw Alex Oliva using a propane torch at the time of the explosion. None of the surveillance photographs taken of the EMC-423 immediately before and during the explosion show any person near the EMC-423's cargo pump, or anyone using a propane torch.

17. In addition, the Government's pre-litigation actions support the conclusion that the Government was not substantially justified in bringing this action. The Government either failed to critically analyze all of the evidence developed before trial, including evidence introduced during a formal Coast Guard hearing during the months of April, June and July 2005, or it elected to completely ignore that evidence. By the end of the Coast Guard hearing it should have been clear to the Government that there was no credible evidence to support the Government's propane torch theory. The evidence at the Coast Guard hearing included the testimony of the eyewitnesses to the explosion and the same video stills that this Court relied upon in concluding that there was no credible evidence that a propane torch was used on the EMC-423 at the time of the explosion.

18. Attorneys' fees in the amount of $2,141,261.42 and other expenses in the amount for $261,684.40 were incurred in the defense of EMC in this civil litigation and the investigation of this matter prior to the filing of this litigation, and were paid by GAIC. See the summary attached hereto as Exhibit 2. In addition, $511,762.58 was incurred, and paid by GAIC, for

5

expert witness fees, which were necessary for the preparation of the case in support of EMC. As itemized support for these fees, see the attached Affidavits of Warren J. Marwedel (Exhibit 3), David Sump (Exhibit 4), and Julia Price (Exhibit 5). These Affidavits include itemized statements of the time expended and rates charged for the services provided by Troutman Sanders, LLP, Marwedel, Minichello & Reeb, P.C., and the various expert witnesses.

19. EMC incurred attorneys' fees in the amount of $179,891.25 for the participation of its in-house counsel, David R. Anderson, in the defense of EMC in this civil action that were not paid for nor reimbursed by Great American. See the attached Affidavits of Dennis H. Egan (Exhibit 1) and David R. Anderson (Exhibit 6).

20. EMC and GAIC seek the full hourly rate charged by the attorneys in this matter as it involved a complicated maritime matter necessitating specially-qualified attorneys. EMC was represented at trial by attorneys David Sump and Christopher Abel with the firm of Troutman Sanders LLP, both of which are prior Coast Guard JAG officers with unique experience in handling matters involving the Oil Pollution Act. EMC was also represented by attorneys from the law firm of Marwedel, Minichello & Reeb, P.C., who have many years of specialized experience in the field of maritime and transportation law. See Affidavits of Warren J. Marwedel and David Sump. The American Bar Association Model Rules of Professional Conduct recognize Admiralty law as a specialization in the field of law. Rule 7.4(c).

21. The government began litigating this matter long before it filed the instant lawsuit. Just hours after the incident occurred, the Coast Guard immediately arrived at the scene and began gathering evidence, taking witness statements, and conducting its investigation. EMC was designated the responsible party under OPA within days of the explosion, and it was clear within the first few days following the explosion that the Coast Guard was targeting EMC as the

6

cause of the incident. Therefore, it was necessary for EMC to defend itself in the ongoing investigation. All of the defense costs that were incurred from as early as January 19, 2005 produced tangible information and evidence that directly assisted in EMC's representation in this litigation. In fact, this is the very same information that the government had in its possession through trial (namely, that no one was using a propane torch at the time of the explosion, and that the standpipe was not open at the time of the explosion).

22. Furthermore, the Government made its intention to file suit against EMC clear as early as December 2005. In July 2005, EMC filed an action under the Limitation of Liability Act. (Opinion, p. 3) The Government filed a number of claims in the Limitation of Liability action but, then, in December of 2005 the Government sought and received dismissal from the Limitation of Liability action in order to allow it to file a separate lawsuit against EMC. *Id.* The services performed by EMC's attorneys and experts after that date were, in part, directed toward preparing for the inevitable lawsuit to be filed by the Government.

23. The work that was performed, both by attorneys and experts, prior to the filing of this lawsuit was instrumental in producing the sound and effective defense of EMC in this litigation. The parties have essentially been litigating the issue ultimately decided by this Court, namely, whether EMC is entitled to limitation of liability pursuant to the Oil Pollution Act, since 2005. Therefore, EMC asserts that it is entitled to recover some of the legal fees it incurred prior to the date of filing of this litigation.

24. EMC also intends to include the fees incurred in preparation of this Fee Petition. EMC requests that it be given the opportunity to supplement its documentation upon the completion of briefing on this Fee Petition.

**WHEREFORE**, Egan Marine Corporation, on its own behalf and on behalf of Great American Insurance Company, prays as follows:

A. That this Court find that the United States of America was not substantially justified in filing this lawsuit;

B. That this Court find that Egan Marine Corporation, on its own behalf and on behalf of Great American Insurance Company, is entitled to an award of attorneys' fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, federal common law, and under the Court's inherent authority to award attorneys' fees;

C. That this Court award to Egan Marine Corporation, on its own behalf and on behalf of Great American Insurance Company, attorneys' fees in the amount of $2,141,261.42, other expenses in the amount for $261,684.40, and fees for expert witnesses in the amount of $511,762.58, which were paid by Great American Insurance Company;

D. That this Court award to Egan Marine Corporation attorneys' fees in the amount of $179,891.25, which were incurred by Egan Marine Corporation and which were not paid or reimbursed by Great American Insurance Company;

E. That this Court award to Egan Marine Corporation, on its own behalf and on behalf of Great American Insurance Company, its attorneys' fees and expenses incurred in the preparation of this Fee Petition; and,

F. For such other and further relief as this Court deems just.

                Respectfully Submitted,
                EGAN MARINE CORPORATION, on its own
                behalf and on behalf of GREAT AMERICAN
                INSURANCE COMPANY,

                By: _____s/ Warren J. Marwedel_____
                        One of its Attorneys

David H. Sump (*Pro hac vice*)
Christopher A. Abel (*Pro hac vice*)
TROUTMAN SANDERS, LLP
150 West Main Street
Suite 1600
Norfolk, Virginia 23510
(757) 687-7775 (telephone)
(757) 687-7510 (facsimile)

Christopher H. White (Bar No. 6280031)
TROUTMAN SANDERS, LLP
55 West Monroe Street
Suite 3000
Chicago, Illinois 60603
(312) 759-1920 (telephone)
(312) 759-1939 (facsimile)

Warren J. Marwedel
William P. Ryan
Stephanie Espinoza
Marwedel, Minichello & Reeb, P.C.
10 South Riverside Plaza, Suite 720
Chicago, IL 60606
(312) 902-1600

## **CERTIFICATE OF SERVICE**

I, William P. Ryan, an attorney, certify that on this 11th day of January, 2012, I electronically filed the foregoing *Fee Petition* with the Clerk of the Northern District of Illinois via its CM/ECF system, which will send a notice of electronic filing to the following counsel:

- **AUSA**
  USAILN.ECFAUSA@usdoj.gov
- **Christopher Alan Abel**
  chris.abel@troutmansanders.com
- **David Ralph Anderson**
  eganmarine@aol.com,draattny@comcast.net,dhe11842@aol.com
- **Stephen R. Campbell**
  stephen.campbell@usdoj.gov,scamp96798@aol.com,torts.aa.files@usdoj.gov
- **James W. Carbin**
  jwcarbin@duanemorris.com,tmreo@duanemorris.com,amchristie@duanemorris.com
- **Natalia M. Delgado**
  ndelgado@pretzel-stouffer.com
- **Kevin Brian Duckworth**
  kbd@greensfelder.com
- **Matthew James Egan**
  megan@pretzel-stouffer.com,cmclean@pretzel-stouffer.com
- **Dirk Edgar Ehlers**
  DEhlers@SRCattorneys.com,CScarpaci@SRCattorneys.com
- **Ryan J. Gavin**
  rjg@greensfelder.com
- **Adam L. Gill**
  algill@duanemorris.com,vamoore@duanemorris.com,jaconiglio@duanemorris.com
- **Clark W. Hedger**
  ch1@greensfelder.com
- **Douglas Morgan Hottle**
  douglas.hottle@usdoj.gov
- **Robert Emmett Kelly**
  Robert.Kelly@usdoj.gov
- **Richard Patrick Kenyon**
  rkenyon@pretzel-stouffer.com
- **Mimi Y. Kim**
  mkim@lplegal.com,JGillingham@pretzel-stouffer.com,mkim@pretzel-stouffer.com,jmedina@pretzel-stouffer.com
- **Thomas William Mulcahy**
  tmulcahy@crishamlaw.com,tmulcahy@SRCattorneys.com
- **John P. O'Malley**
  jomalley@srcattorneys.com

- **Eric S Pruitt**
  eric.pruitt@usdoj.gov,craig.oswald@usdoj.gov,usailn.ecfausa@usdoj.gov
- **Edward B. Ruff , III**
  eruff@pretzel-stouffer.com
- **John T. Schriver**
  jtschriver@duanemorris.com,emorales@duanemorris.com,rchavers@duanemorris.com
- **David J Simmons**
  ds@greensfelder.com,meg@greensfelder.com
- **David Harlan Sump**
  david.sump@troutmansanders.com
- **Jennifer Curtin Timm**
  jennifer_timm@live.com,dhe111842@aol.com
- **Michael Patrick Turiello**
  mturiello@pretzel-stouffer.com
- **Christopher Howard White**
  christopher.white@troutmansanders.com,audrey.minglin@troutmansanders.com

    /s/ William P. Ryan
William P. Ryan